UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IGNACIO PANEQUE on behalf of himself                    Case No.:
and all others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A.
and FRENKEL LAMBERT WEISS
WEISMAN & GORDON LLP,

Defendants.
_____/

## CLASS ACTION COMPLAINT

Plaintiff IGNACIO PANEQUE, on behalf of himself and all others similarly situated,

alleges breach of contract and violations of the Real Estate Settlement Procedures Act, 12 U.S.C.

§ 2601 *et seq.* ("RESPA"), the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.*

("FDCPA"), Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA"), and

Florida Deceptive and Unfair Trade Practices Act § 501.201 *et seq.* ("FDUTPA"), against

Defendants BANK OF AMERICA, N.A. ("Bank of America") and FRENKEL LAMBERT

WEISS WEISMAN & GORDON LLP ("Frenkel").

1.      Hundreds of thousands of homes are in some stage of foreclosure in the United

States every month. http://www.corelogic.com/research/foreclosure-report/national-foreclosure-

report-january-2015.pdf. Most homeowners facing foreclosure are desperate to keep their homes

and are willing to do close to anything to continue living in them with their families. Defendants

exploit their desperation by placing them in danger of foreclosure if homeowners do not pay fees

Defendants demand—including fabricated debt characterized as "estimated" fees in the reinstatement amounts.

2. Bank of America provides loans to mortgagors throughout the United States. If a homeowner defaults on payments, Bank of America imposes certain conditions on homeowners to avoid foreclosure, including payment of Bank of America's attendant fees, like attorney's fees. Despite its contractual obligations in its standard form Mortgage Agreement and Note to only charge actual fees allowed under applicable law, Bank of America leverages its position of power over homeowners facing foreclosure and demands payment of estimated fees not actually owed; that is, fees Bank of America has not actually incurred.

3. Bank of America includes these estimated fees into the total demand and insists that homeowners pay the full amount before Bank of America will reinstate their loans to avoid foreclosure. Frenkel turns a profit by acting as a third party debt collector for mortgagees like Bank of America and by demanding the illegal charges on behalf of Bank of America. However, the Eleventh Circuit held that demands for "estimated attorneys' fees" associated with reinstatement of loans violate the FDCPA and FCCPA.

4. These practices enrich Defendants at the expense of homeowners struggling to stay current on their mortgages, and unnecessarily place borrowers at greater risk of default and of losing their homes to foreclosure. Bank of America and Frenkel knowingly violated state and federal debt collection statutes by demanding these fictitious fees. Bank of America also breached its Mortgage Agreement and Note by charging fees not allowed under applicable law. Defendants must be held accountable for their actions to eliminate their abusive debt collection practices.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA and RESPA, federal statutes.

6.      The Court has supplemental jurisdiction over the FCCPA, FDUTPA, and breach of contract claims under 28 U.S.C. § 1367 because the basis of the FDCPA and RESPA federal claim involves the same debt collection practices that form the basis of the state claims.

7.      The Court has personal jurisdiction because Defendants do business throughout the United States, including Florida. Further, their voluntary contact with Plaintiff to charge and collect debts in Florida made it foreseeable that Defendants would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction.  Additionally, Defendant Bank of America maintains a principal mortgage servicing office in this District at 355 Alhambra Circle Suite 1370, Coral Gables, FL 33134.

## PARTIES

9.      Plaintiff Ignacio Paneque is a natural person who currently resides in this District.

10.     Defendant Bank of America is a national association with a principal place of business at 150 N. College Street, Charlotte, NC 28255. Bank of America is a multinational banking and financial services corporation and is one of the largest banking companies in the United States. It maintains a principal mortgage servicing office in this District at 355 Alhambra Circle, Suite 1370, Coral Gables, FL 33134.

11.     Defendant Frenkel is a limited liability partnership with a principal place of business at 20 West Main St., Bay Shore, New York, 11706. It is a law firm servicing, among other things, insurance companies. Frenkel acts as a third party debt collector for institutions, like Bank of America.

## APPLICABLE LAW

### RESPA

13.     Rulemaking authority for RESPA was assigned to the Consumer Financial Protection Bureau ("CFPB") under the Dodd-Frank Act. Pub. L. No. 111-203, 124 Stat. 1376, §§ 1061, 1098 (July 21, 2010); 12 C.F.R. pt. 1024 (formerly 24 C.F.R. pt. 3500).

14.     In 2013, the CFPB enacted new regulations implementing specific provisions under the Dodd-Frank Act for mortgage loan servicers including, but not limited to, requirements for responding to a borrower's written request for information concerning his or her mortgage loan. *See* 12 CFR § 1024.36 *et seq.*; Public Law 111-203, 124 Stat. 1376 (2010).

15.     RESPA provides a private cause of action against a mortgage servicer if brought within (3) years in the case of a violation of the provisions in § 2605. 12 U.S.C. § 2614.

16.     RESPA defines "servicer" as the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(3).

17.     RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

18.     Pursuant to RESPA, a servicer of a federally related mortgage loan "shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). RESPA's mortgage servicing regulations require servicers to respond in writing to a borrower's written request for information and provide responsive information that is "clear and conspicuous." 12 CFR § 1024.32(a)(1).

19.     RESPA and its implementing regulations should be broadly construed to effectuate their remedial purpose. *Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 187 (E.D.N.Y. 2014) ("The Act was designed to throw the federal judiciary's protective cloak over residential-occupant owners of real property and their kin to protect against abuse by banks during loan closings and subsequent related events. The Act should be broadly applied to accomplish its prophylactic purposes by exercising federal subject matter jurisdiction.")

**FDCPA**

12.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

13.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

14.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such

amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

15.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

16.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

17.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

18.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

19.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**FCCPA**

20.     The Florida Supreme Court liberally construes public protection statutes in favor of the public. *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

21.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

22.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

23.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of

some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

24.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

25.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

26.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

27.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## FDUPTA

28.     The FDUTPA is "construed liberally to promote" the protection of consumers and businesses from "unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

29.     The FDUTPA creates a private right of action for FDUTPA violations. *Id.* § 501.211.

30.     The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices in the conduct of any trade or commerce" against consumers. *Id.* § 501.204(1).

31.     The FDUTPA defines "consumer" broadly as an individual, entity, or any group or combination. *Id.* § 501.203(7).

32.     The FDUTPA defines "trade or commerce" as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Id.* § 501.203(8).

33.     Where there is a violation of a statute prohibiting unfair or deceptive acts, a *per se* violation of Florida's FDUTPA has also occurred. *See* Fla. Stat. § 501.203(3) (stating a violation of any law proscribing unfair methods of competition, or unfair, deceptive, or unconscionable acts is also a violation the FDUTPA); *Blair v. Wachovia Mortg. Corp.*, No. 11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) ("[A] *per se* violation of FDUTPA stems from the transgression of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.").

## FACTUAL ALLEGATIONS

34.     On or around May 1, 2006, Plaintiff purchased a home in Port Saint Lucie, Florida through a $262,800 loan from Bank of America, secured by a mortgage on the property. Copies of the Plaintiff's Mortgage Agreement and Mortgage Note are enclosed as Exhibit "A" and Exhibit "B" respectively. The Mortgage Note and Agreement was modified on September 1, 2007.

35.     Plaintiff made continuous payments on his mortgage but fell behind sometime before December 28, 2015.

36.     On December 17, 2015, Plaintiff, through counsel, sent a written request via e-mail to Frenkel requesting Bank of America to provide the amount he must pay to reinstate his loan.

37.     On or about December 21, 2015, Frenkel responded to the Plaintiff's counsel and confirmed the reinstatement figures were requested from Bank of America.

38.     In a letter dated December 28, 2015, Frenkel, on behalf of Bank of America, responded and advised Plaintiff "[p]er your request, we have enclosed information concerning the reinstatement of this loan[]" and that "**PURSUANT TO FEDERAL LAW, PLEASE BE ADVISED THAT WE ARE ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE** (emphasis original). The letter is attached as Exhibit "C."

39.     Frenkel advised that "**failure to timely remit sufficient funds will result in rejection and/or return of the funds and your account will not be reinstated**" (*Id.*) and that Bank of America "reserve[d] the right to adjust or correct the figures provided and to refuse any funds if they are insufficient to reinstate the loan in full for any reason … (emphasis original). *Id.*

40.     The total amount Plaintiff was required to pay for reinstatement of his loan was $45,066.73 if the amount was paid on or before January 22, 2016. *Id.*

41.     The "total" funds to reinstate the loan included: (1) $250 for "Estimated" "Fees Incurred Outside the Fee Schedule"; (2) $250 for an "Estimated" "Legal Fee for Cancellation of Action"; (3) $18.50 for an "Estimated" "Dismissal"; and $2,955.00 for "Other/Miscellaneous Fees." The "estimated" amounts were based on projected amounts not actually incurred at the time. The "total" funds also included a total sum of $2,695.00 labeled "Litigation MGT Fee."

42.     Bank of America failed to provide any information or explanation concerning the "Other/Miscellaneous Fees" or "Litigation MGT Fee."

43.     The letter admitted that some portion of the reinstatement amount included estimated fees and costs.

44.     Frenkel attempted to collect amounts on behalf of its principal, Bank of America.

45.     Bank of America demanded the Plaintiff pay these fees despite having previously entered into and operating under a consent judgement with the federal government and Florida attorney general.

46.     The consent judgement provided that Bank of America's foreclosure-related "service fees, including third-party fees, … shall be bona fide, reasonable in amount, and disclosed in detail to the borrower…"  United States District Court for the District of Colombia, Case No.: *1:12-cv-00361-RMC*, Doc. 11, Ex. A pg. 35.

47.     Specifically, the consent judgement permitted Bank of America to charge as follows:

Servicer may collect a default-related fee *only if the fee is for reasonable and appropriate services actually rendered* and one of the following conditions is met:

> a. the fee is expressly or generally authorized by the loan instruments and not prohibited by law or this Agreement;
>
> b. the fee is permitted by law and not prohibited by the loan instruments or this Agreement; or
>
> c. the fee is not prohibited by law, this Agreement or the loan instruments and is a reasonable fee for a specific service requested by the borrower that is collected only after clear and conspicuous disclosure of the fee is made available to the borrower.

*Id*.

48.     Despite the consent judgment's prohibitions, Bank of America, through Frenkel, nonetheless demanded the full amount, including illegal "estimated" amounts, as immediately due.

49.     Additionally, these demands were a direct breach of each of the following contractual provisions, permitting *only* recovery of actually amounts incurred: (1) Paragraph 9 of the Mortgage Agreement (Exhibit A) permitted Bank of America recovery of "amounts *disbursed*" in protecting its interest and rights in the mortgage agreement (emphasis added); (2) Paragraph 14 of the Mortgage Agreement  prohibited Bank of America from charging estimated fees, stating "[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; (3) Paragraph 22 of Bank of America's Mortgage Agreement permitted Bank of America to collect "expenses *incurred* in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans (emphasis added); and (4) Paragraph 6(E) of Bank of America's Mortgage Note (Exhibit B) permitted Bank of America the "right to be *paid back* . . . for all of its costs and expenses in enforcing" the Note, which included "reasonable attorneys' fees" (emphasis added).

50.     By charging estimated fees tacked on to the reinstatement amount, Defendants frustrated Plaintiff's ability to reinstate his loan. This caused the Plaintiff to accrue additional interest and fees on his mortgage loan and incur additional attorney's fees and costs in further litigation of the foreclosure action.

51.     In a remarkably similar case involving demands for "estimated" attorney's fees associated with loan reinstatement to avoid foreclosure, the Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the defendant had indeed falsely represented what the Plaintiff owed and that no

agreement expressly obligated the Plaintiff to pay these "estimated" fees. *See Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at \*2-6 (11th Cir. Dec. 3, 2015) ("[Defendant] violated the FDCPA and FCCPA by charging [Plaintiffs] estimated attorney's fees that they had not agreed to pay in the security agreement.").

52.      On February 22, 2016, the Plaintiff sent a cure letter to the Defendants as required by his mortgage. See the letter attached as Exhibit "D."

53.      After a reasonable amount of time, the Plaintiff filed this lawsuit because the Defendants failed to cure their breach of the contractual obligations in the Plaintiff's mortgage, violation of federal law, and violation of Florida law.

## CLASS ACTION ALLEGATIONS

### Florida Class 1

54.      Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Bank of America's breach of contract violations (the "Florida Class 1"), subject to modification after discovery and case development:

> All persons in Florida who entered into mortgage notes and/or agreements with Bank of America that did not authorize charging "estimated" fees, but to whom Bank of America nonetheless charged "estimated" fees associated with reinstatement of loans during the applicable statute of limitations.

### Florida Class 2

55.      Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Defendants' FDUTPA violations ( the "Florida Class 2"), subject to modification after discovery and case development:

All Florida residents to whom Defendants charged, collected, or attempted to collect "estimated" reinstatement of loan amounts during the applicable statute of limitations.

## Florida Class 3

56.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Defendants' RESPA violations (the "Florida Class 3"), subject to modification after discovery and case development:

All Florida residents to whom Defendants responded to a written request for information that included estimated, unclear or inconspicuous fees, including but not limited to "Other/Miscellaneous Fees" or "Litigation MGT Fees" during the applicable statute of limitations.

## Florida Class 4

57.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Frenkel's FDCPA violations (the "Florida Class 4"), subject to modification after discovery and case development:

All persons in the United States to whom Frenkel, charged, collected, or attempted to collect "estimated" reinstatement of loan amounts during the applicable statute of limitations.

## Florida Class 5

58.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by FCCPA violations ("Florida Class 5"), subject to modification after discovery and case development:

All Florida residents to whom Defendants charged, collected, or attempted to collect "estimated" reinstatement of loan amounts during the applicable statute of limitations.

59.     Class members are identifiable through Defendants' records and payment databases.

60.     Excluded from the Classes are: (1) Defendants; (2) any entities in which Defendants have a controlling interest; (3) Defendants' agents and employees; (4) any Judge to whom this action is assigned; and (5) any member of such Judge's staff and immediate family.

61.     Plaintiff proposes that he serve as class representative.

62.     Plaintiff and the Classes have all been harmed by the actions of Defendants.

63.     Numerosity is satisfied, as there are likely tens of thousands of class members. Individual joinder of these persons is impracticable.

64.     There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

      a.   Whether Frenkel violated the FDCPA by charging monies not due;

      b.   Whether Defendants violated the RESPA by providing unclear and inaccurate information;

      c.   Whether Defendants violated the FCCPA by charging monies not due;

      d.   Whether Defendants violated general provisions of the FDUTPA by charging monies not due;

      e.   Whether the violations of the FDCP, FCCPA, and/or RESPA were per se violations of the FDUTPA;

      f.   Whether Bank of America breached its mortgage agreement and/or note by charging fees not due.

      g.   Whether Plaintiff and class members are entitled to actual or statutory damages as a result of Defendants' actions;

    h.   Whether Plaintiff and class members are entitled to attorney's fees and costs; and

    i.   Whether Defendants should be enjoined from engaging in such conduct in the future.

65.    Plaintiff's claims are typical of the claims of the Classes.

66.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions.

67.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

68.    The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications concerning individual class members.

## COUNT I AS TO BANK OF AMERICA'S BREACH OF CONTRACT
### (Florida Class 1)

69.    Bank of America entered into a Mortgage Agreement and Note with Plaintiff whereby Bank of America loaned money to Plaintiff to purchase his property in exchange for certain payment over time, and in the event of default, a certain mechanism to avoid foreclosure.

70.    Plaintiff's Mortgage Agreement and Note only authorized payment actually incurred associated with the default and allowed under applicable law.

71.    Bank of America breached the contract with Plaintiff when it charged him estimated amounts exceeding the amount actually incurred and not allowed under applicable law.

72.    Plaintiff was harmed by Bank of America's breach.

**COUNT II AS TO FRENKEL AND BANK OF AMERICA'S VIOLATIONS OF THE
FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT §§ 501.203(3),
501.204(1)
(Florida Class 2)**

73.     Plaintiff incorporates by reference the prior paragraphs as if set forth fully herein.

74.     Plaintiff is a "consumer" as defined by Fla. Stat. § 501.203(7).

75.     Bank of America engaged in "trade or commerce" as defined by *Id.* § 501.203(8)
when it advertised, offered, and provided the loan to purchase Plaintiff's property.

76.     Frenkel engaged in "trade or commerce" as defined by *Id.* § 501.203(8) when it
attempted to collect a debt for Bank of America for compensation.

77.     Defendants violated § 559.72(9) of the FCCPA when Frenkel attempted to
collect, and Bank of America charged, an amount not owed.

78.     A violation of Fla. Stat. § 559.72(9) of the FCCPA is a per se violation of
FDUTPA under Fla. Stat. § 501.203(3).

79.     In addition to the above-referenced per se FDUTPA violations, Defendants also
generally violated FDUTPA under Fla. Stat. § 501.204(1) when they engaged in unfair and
deceptive practices in trade or commerce by taking advantage of consumers in claiming and
collecting debts for amounts not owed.

80.     As a result of Defendants' FDUTPA violations, Plaintiff suffered substantial
damage, including but not limited to financial damage incurred from Defendants' unlawful
billing practices.

**COUNT III AS TO BANK OF AMERICA'S VIOLATION OF THE REAL ESTATE
SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)
(Florida Class 3)**

81.     Plaintiff incorporates by reference the prior paragraphs as if set forth fully herein.

82.     Bank of America is a "servicer" because it was responsible for "servicing" the Plaintiff's mortgage loan when it would receive scheduled periodic payments from Plaintiff pursuant to the terms of his mortgage loan and made payments of principal and interest from those amounts under the terms of the loan. 12 U.S.C. § 2605(i)(3).

83.     Plaintiff's loan is a "federally related mortgage loan" because it is secured by a first or subordinate lien a residential real property designed for the occupancy of one to four families and was made in whole or in part by Bank of America, a lender with deposits or accounts which are insured by the FDIC.

84.     As a servicer of a federally related mortgage loan, Bank of America must comply with any regulation implementing the provisions of RESPA. *See* 12 U.S.C. § 2605(k)(1)(E).

85.     Plaintiff, through counsel, sent a written "request for information" to Bank of America concerning his mortgage loan and the amount necessary for reinstatement of his loan. 12 CFR § 1024.36

86.     Bank of America responded to the Plaintiff's written request with information that contained illegal "estimated fees" not owed by Plaintiff and "Other/Miscellaneous Fees" without identification or explanation as to why and for what they were charged. *See* 12 CFR § 1024.36(d)(1)(i).

87.     Bank of America violated § 2605(k)(1)(E) when it failed to provide information to Plaintiff in a clear and conspicuous manner, as required by 12 CFR § 1024.32(a)(1), by charging for "estimated" fees not owed; "Other/Miscellaneous Fees"; and "Litigation MGT Fee[s]" and demanding Plaintiff pay these fees to reinstate his loan. 12 CFR § 1024.32(a)(1); 12 U.S.C. § 2605(k)(1)(E).

88.     As a result of Bank of America's RESPA violation, Plaintiff suffered substantial damage, including but not limited to financial damage incurred because of Bank of America's illegal conduct.

### COUNT IV AS TO FRENKEL'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e, 1692f
### (Florida Class 4)

89.     Plaintiff incorporates by reference the prior paragraphs as if set forth fully herein.

90.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased his home by mortgage in Florida.

91.     Defendant Frenkel is a "debt collector" as defined by 15 U.S.C. § 1692a(6) when it attempted to collect a debt from Plaintiff for reinstatement of loans. In its debt collection letter to Plaintiff, Defendant disclosed it was "attempting to collect a debt and that any information obtained will be used for that purpose." Specifically, Frenkel is a third party debt collector on behalf of Plaintiff's mortgage with Bank of America.

92.     Frenkel engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when it sent the December 28, 2015 debt collection letter to Plaintiff demanding money purportedly due for reinstatement of his loan to avoid foreclosure.

93.     Frenkel violated 15 U.S.C. § 1692e when it made false, deceptive, and misleading representations about the character and amount that Plaintiff owed to reinstate his loan to avoid foreclosure.

94.     Frenkel violated 15 U.S.C. § 1692f when it charged estimated fees not owed and not expressly authorized by agreement.

95.     As a result of Frenkel's FDCPA violations, Plaintiff suffered substantial damage, including but not limited to financial damage incurred from Frenkel's illegal billing practices.

## COUNT V AS TO FRENKEL AND BANK OF AMERICA'S VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)
### (Florida Class 5)

96.     Plaintiff incorporates by reference the prior paragraphs as if set forth fully herein.

97.     Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased his home by mortgage.

98.     Defendants are "persons" as stated in the FCCPA.

99.     Defendants attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when Bank of America charged and Frenkel attempted to collect fees not owed. *Id.* § 559.72(9).

100.     Defendants' acts of illegally attempting to collect a debt from Plaintiff and deliberately including the amount not owed into the total amount required for reinstatement constitutes a knowing violation of § 559.72(9) of the FCCPA.

101.     As a result of Defendants' FCCPA violations, Plaintiff suffered substantial damage, including but not limited to financial damage incurred from Defendants' illegal billing practices.

### JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

102.     Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

103.     Plaintiff reserves the right to amend his Complaint and add a claim for punitive damages.

## RELIEF REQUESTED

WHEREFORE. Plaintiff, himself and on behalf of the Classes, respectfully requests this Court to enter judgment against Defendants for all of the following:

a.    That Plaintiff and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.    That Plaintiff and all class members be awarded statutory damages;

c.    That Plaintiff and all class members be awarded costs and attorney's fees;

d.    That the Court enter a judgment permanently enjoining Defendants from charging and/or collecting debt in violation of the FDCPA,FCCPA, and RESPA;

e.    That, should the Court permit Defendants to continue charging and/or collecting debt, it enter a judgment requiring them to adopt measures to ensure FDCPA, FCCPA, and RESPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that Defendants comply with those measures;

f.    That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the FDCPA, FCCPA, RESPA, and FDUTPA;

g.    That the Court enter an order that Defendants and their agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

h.    That the Court certify Plaintiff's claims and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure; and

i.    Such other and further relief as the Court may deem just and proper.

Dated:  April 6, 2016

Respectfully Submitted,

/s/ *James L. Kauffman*
James L. Kauffman (Fla. Bar. No. 12915)
Bailey & Glasser LLP
1054 31st Street, Suite 230
Washington, DC 20007
Telephone:  (202) 463-2101
Facsimile:  (202) 342-2103
Email: jkauffman@baileyglasser.com

J. Dennis Card, Jr., (Fla. Bar. No. 0487473)
Darren Newhart, (Fla. Bar No. 0115546)
Hicks Motto & Ehrlich, P.A.
3399 PGA Boulevard, Suite 300
Palm Beach Gardens, FL 33410
Telephone: (561) 687-1717
Facsimile: (561) 697-3852
Email: dcard@hmelawfirm.com

Christopher Legg, Esq. (Fla. Bar. No. 44460)
Christopher W. Legg, P.A.
3837 Hollywood Blvd., Suite B
Hollywood, FL 33021
Telephone: (954) 235-3706
Facsimile: (954) 927-2451
Email: ChrisLeggLaw@gmail.com

*Counsel for Plaintiff and the Putative Class*