UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:16-cv-21212-GAYLES

IGNACIO PANEQUE on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

BANK OF AMERICA, N.A.
and FRENKEL LAMBERT WEISS
WEISMAN & GORDON LLP,

      Defendants.

_____/

## PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Plaintiff IGNACIO PANEQUE, on behalf of himself and all others similarly situated,

alleges violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*

("RESPA") and the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA")

against Defendant BANK OF AMERICA, N.A. ("Bank of America") and violations of the

FCCPA and the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA") against

Defendant FRENKEL LAMBERT WEISS WEISMAN & GORDON LLP ("Frenkel").

1.      Bank of America is a mortgage lender and servicer. Frenkel is a mortgage

foreclosure law firm. Frenkel, on behalf of Bank of America, collects mortgage loans and fees

from homeowners. Bank of America and Frenkel demanded that Plaintiff pay estimated fees to

reinstate his loan to avoid foreclosure. "Estimated" fees are fees companies expect to incur in the

event that certain conditions occur, but have *not* actually incurred. The Eleventh Circuit has

denounced "estimated" fees associated with reinstatement of loans to be a violation of the FCCPA and FDCPA.

2.      Hundreds of thousands of homes are in some stage of foreclosure in the United States every month. http://www.corelogic.com/research/foreclosure-report/national-foreclosure-report-january-2016.pdf. Most homeowners facing foreclosure are desperate to keep their homes and are willing to do close to anything to continue living in them with their families. Frenkel and Bank of America conceal the true nature of the amount owed by homeowners by including ambiguous fees and costs in the amount homeowners must pay to reinstate their loan.  In doing so, Defendants exploit their desperation by placing them in danger of foreclosure if homeowners do not pay fees Defendants demand—including fabricated debt characterized as "estimated" fees in the reinstatement amounts.

3.      Frenkel and Bank of America know that the "estimated" charges are illegal amounts that cannot be collected in a borrower's loan reinstatement because each maintains records of the actual costs and fees associated with each borrower's loan. Additionally, Frenkel and Bank of America are sophisticated entities that know that the standard mortgage only allows them to recover fees and costs actually incurred.  Further, the reinstatement quote received by Plaintiff in this action was communicated in a form letter that Frenkel sends routinely to mortgage borrowers on Bank of America's behalf.  This practice allows both Defendants to profit from these illegal charges because the longer a loan remains in default, the more they can charge in default-related fees that must be paid by the borrower to reinstate the loan or are added to any subsequently modified principal amount.

4.      By the conduct described above, Defendants knowingly violated the RESPA, FDCPA, and FCCPA, which caused Mr. Paneque's and the putative class members' actual, concrete, and particularized injuries. Mr. Paneque's injuries, in particular, are detailed *infra*.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA and RESPA, federal statutes.

6.      The Court has supplemental jurisdiction over the FCCPA claims under 28 U.S.C. § 1367 because the basis of the FDCPA and RESPA federal claims involve the same debt collection practices that form the basis of the state claims.

7.      The Court has personal jurisdiction because Defendants do business throughout the United States, including Florida. Further, their voluntary contact with Plaintiff to charge and collect debts in Florida made it foreseeable that Defendants would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. Additionally, Defendant Bank of America maintains a principal mortgage servicing office in this District at 355 Alhambra Circle Suite 1370, Coral Gables, FL 33134.

## PARTIES

9.      Plaintiff Ignacio Paneque is a natural person who currently resides in this District.

10.     Defendant Bank of America is a national association with a principal place of business at 150 N. College Street, Charlotte, NC 28255. Bank of America is a multinational

banking and financial services corporation and is one of the largest banking companies in the United States. It maintains a principal mortgage servicing office in this District at 355 Alhambra Circle, Suite 1370, Coral Gables, FL 33134.

11.     Defendant Frenkel is a limited liability partnership with a principal place of business at 20 West Main St., Bay Shore, New York, 11706. Frenkel acts as a third party debt collector for institutions, like Bank of America.

## APPLICABLE LAWS

### RESPA

12.     Rulemaking authority for RESPA was assigned to the Consumer Financial Protection Bureau ("CFPB") under the Dodd-Frank Act. Pub. L. No. 111-203, 124 Stat. 1376, §§ 1061, 1098 (July 21, 2010); 12 C.F.R. pt. 1024 (formerly 24 C.F.R. pt. 3500).

13.     In 2013, the CFPB enacted new regulations implementing specific provisions under the Dodd-Frank Act for mortgage loan servicers including, but not limited to, requirements for responding to a borrower's written request for information concerning his or her mortgage loan. *See* 12 CFR § 1024.36 *et seq.*; Public Law 111-203, 124 Stat. 1376 (2010).

14.     RESPA provides a private cause of action against a mortgage servicer if brought within (3) years in the case of a violation of the provisions in § 2605. 12 U.S.C. § 2614.

15.     RESPA defines "servicer" as the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(3).

16.     RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other

payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

17.     Pursuant to RESPA, a servicer of a federally related mortgage loan "shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). RESPA's mortgage servicing regulations require servicers to respond in writing to a borrower's written request for information and provide responsive information that is "clear and conspicuous." 12 CFR § 1024.32(a)(1).

18.     RESPA and its implementing regulations should be broadly construed to effectuate their remedial purpose. *Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 187 (E.D.N.Y. 2014) ("The Act was designed to throw the federal judiciary's protective cloak over residential-occupant owners of real property and their kin to protect against abuse by banks during loan closings and subsequent related events. The Act should be broadly applied to accomplish its prophylactic purposes by exercising federal subject matter jurisdiction.")

**FDCPA**

19.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

20.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

21.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

22.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

23.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

24.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

25.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

26.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**<u>FCCPA</u>**

27.     The Florida Supreme Court liberally construes public protection statutes in favor of the public. *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

28.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

29.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

30.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

31.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

32.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

33.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

34.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## FACTUAL ALLEGATIONS

35.     On or around May 1, 2006, Plaintiff purchased a home in Florida through a $262,800 loan from Bank of America, secured by a mortgage on the property. Copies of the Plaintiff's Mortgage Agreement and Mortgage Note are enclosed as Exhibit "A" and Exhibit "B" respectively.

36.     Bank of America, or a division of Bank of America, is the mortgage servicer of the Plaintiff's mortgage.

37.     Plaintiff received a mortgage loan modification from Bank of America in June 2011.

38.     Plaintiff made continuous payments on his mortgage but fell behind sometime before December 2015.

39.     On or about December 16, 2014, Frenkel, on behalf of Bank of America, filed a complaint in the Nineteenth Judicial Circuit for St. Lucie County to initiate a foreclosure with the Court of the Plaintiff's home. See *Bank of Am., N.A. v. Paneque*, No. 56-2014-CA-002638 (St. Lucie Cnty. Fla. Cir. Ct.)

40.     Plaintiff hired the law firm of Christopher W. Legg, P.A. ("Legg, P.A.") to defend him in the foreclosure.  On December 17, 2015, Legg, P.A. sent a written request for information, including sufficient information to identify Plaintiff's mortgage loan, via e-mail to Frenkel requesting that Bank of America provide an itemization of the amount Plaintiff needed to pay to reinstate his loan.

41.     Frenkel contacted Bank of America because on or about December 21, 2015, Frenkel responded to Legg, P.A. confirming that it requested an itemization from Bank of America of the amount necessary to reinstate the Plaintiff's loan.

42.     Plaintiff received a letter dated January 15, 2016 from Frenkel, on behalf of Bank of America, that included a "Reinstatement Calculation" dated December 28, 2015, from Bank of America.

43.     The letter stated: "[p]er your request, we have enclosed information concerning the reinstatement of this loan[]" and that "**PURSUANT TO FEDERAL LAW, PLEASE BE ADVISED THAT WE ARE ATTEMPTING TO COLLECT A DEBT AND THAT ANY**

**INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE** (emphasis original). The letter is attached as Exhibit "C."

44.     The letter advised: "[f]unds must be received on or before 01/22/2016. **Failure to timely remit sufficient funds will result in rejection and/or return of the funds and your account will not be reinstated**"(emphasis in original)

45.     The Reinstatement Calculation stated: "[t]he amount to reinstate this loan must be received timely, which means sufficient time before the foreclosure sale to allow your funds to be matched up with this loan."

46.     The total amount that Bank of America and Frenkel required Plaintiff to pay for reinstatement of his loan was $45,066.73. Bank of America, through Frenkel, provided the itemization of the total amount due.

47.     The total amount due included: (1) $250 for "Estimated" "Fees Incurred Outside the Fee Schedule"; (2) $250 for an "Estimated" "Legal Fee for Cancellation of Action"; (3) $18.50 for an "Estimated" "Dismissal"; and (4) $2,955.00 for "Other/Miscellaneous Fees."

48.     The "estimated" amounts totaling $518.50 were based on projected fees and costs not actually incurred by Bank of America or Frenkel.

49.     The total amount due also included other ambiguous amounts totaling $2,695.00 and generally labeled "Litigation MGT Fee" and "Other/Miscellaneous Fees."

50.     Bank of America failed to provide any information, itemization or explanation concerning the "Other/Miscellaneous Fees" or "Litigation MGT Fee."

51.     Frenkel also failed to provide any information, itemization or explanation concerning the "Other/Miscellaneous Fees" or "Litigation MGT Fee."

52.     The letter stated that some portion of the reinstatement amount included estimated fees and costs.

53.     Frenkel acted as a third party debt collector by attempting to collect an alleged debt from Plaintiff on behalf of Bank of America.

54.     In a highly publicized and remarkably similar case issued by the Eleventh Circuit a month prior to the reinstatement of loan letter at issue, the Eleventh Circuit affirmed that the collection of estimated fees is illegal. The Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the defendants were not permitted to charge "estimated" fees that had not yet incurred in their reinstatement of loan letter. *See Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) ("[The defendants] violated the FDCPA and FCCPA by charging [the plaintiffs] estimated attorney's fees that they had not agreed to pay in the security agreement.").

55.     Before Defendants sent the reinstatement of loan letter at issue, the media and trade publications consistently warned the industry against including estimated fees in reinstatement of loan letters, particularly those in the Eleventh Circuit where the *Prescott* case is binding precedent. Some of those industry warnings are attached as Exhibit "C" and include:

   a.  *11th Circuit Finds Lender Violated FDCPA And Florida Law, Reverses Ruling*, Lexis Legal News (Dec. 7, 2015) ("The appeals court found that Seterus violated the FDCPA and the FCCPA by charging Prescott estimated attorney fees and refused to affirm the District Court's decision.").

   b.  *Eleventh Circuit Issues Stern Warning Against Inclusion of Estimated Fees and Costs in Reinstatement Quotes*, USFN (Jan. 4, 2016) ("The Prescott decision should cause any lender, loan servicer, or law firm that provides reinstatement quotes and/or figures to borrowers to examine its practices and procedures in order to determine whether or not information being provided to borrowers in reinstatement situations could potentially constitute a FDCPA violation (or a

violation of state consumer protection law, such as the FCCPA). The Eleventh Circuit has sent a clear message to the financial services industry . . . .").

56.     Bank of America is a sophisticated mortgage loan servicer with compliance officers monitoring changes in the law. Frenkel is a sophisticated law firm specializing in the mortgage and loan industry also monitoring changes in the law. Yet, both Defendants ignored industry warnings and demanded payment of estimated fees and costs in violation of federal and state law.

57.     Even more troubling, Bank of America demanded that Plaintiff pay estimated fees despite having previously entered into and operating under a consent judgement with the federal government and the Florida attorney general.

58.     The consent judgement provided that Bank of America's foreclosure-related "service fees, including third-party fees, … shall be bona fide, reasonable in amount, and disclosed in detail to the borrower…" United States District Court for the District of Colombia, Case No.: *1:12-cv-00361-RMC*, Doc. 11, Ex. A pg. 35. ("Consent Judgment" Exhibit "D").

59.     Specifically, the Consent Judgment permitted Bank of America to charge as follows:

> Servicer may collect a default-related fee *only if the fee is for reasonable and appropriate services actually rendered* and one of the following conditions is met:
>
> a.  the fee is expressly or generally authorized by the loan instruments and not prohibited by law or this Agreement;
>
> b.  the fee is permitted by law and not prohibited by the loan instruments or this Agreement; or
>
> c.  the fee is not prohibited by law, this Agreement or the loan instruments and is a reasonable fee for a specific service requested by the borrower that is collected only after clear and conspicuous disclosure of the fee is made available to the borrower. *Id.*

60.     Despite the Consent Judgment's prohibitions, Bank of America, through Frenkel, nonetheless demanded the full amount, including illegal "estimated" amounts, as immediately due.

61.     Additionally, these demands were a direct breach of each of the following contractual provisions, permitting *only* recovery of actually amounts incurred: (1) Paragraph 9 of the Mortgage Agreement (Exhibit A) permitted Bank of America recovery of "amounts *disbursed*" in protecting its interest and rights in the mortgage agreement (emphasis added); (2) Paragraph 14 of the Mortgage Agreement prohibited Bank of America from charging estimated fees, stating "[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; (3) Paragraph 22 of Bank of America's Mortgage Agreement permitted Bank of America to collect "expenses *incurred* in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans (emphasis added); and (4) Paragraph 6(E) of Bank of America's Mortgage Note (Exhibit B) permitted Bank of America the "right to be *paid back* . . . for all of its costs and expenses in enforcing" the Note, which included "reasonable attorneys' fees" (emphasis added).

62.     The reinstatement quote sent to Plaintiff is contained in a form letter that Frenkel and Bank of America utilize and routinely send to Bank of America's borrowers.

63.     Frenkel and Bank of America's standard business practice is to send the form reinstatement letters to borrowers, and to demand illegal default-related fees and costs not incurred and not owed.

64.     This type of conduct is not new to Bank of America, as evidenced by the tens of thousands of complaints received by the Consumer Financial Protection Bureau about Bank of America's mortgage loan practices. *See* https://data.consumerfinance.gov/dataset/Consumer-

Complaints/s6ew-h6mp (over 28,000 mortgage servicing and mortgage debt collection complaints specifically about Bank of America since December 2011).

65.     In its May 2014 semi-annual report, the CFPB identified a common problem that consumers face is "the amount of fees the consumer must pay to reinstate the loan can be confusing" and "foreclosure fees are sometimes listed as one line-item on a reinstatement quote, with no itemization provided."  *See*

http://financialservices.house.gov/uploadedfiles/2014_cfpb_semi-annual-report.pdf.

**PLAINTIFF'S STATUTORY RIGHT TO RECEIVE PROPERLY DISCLOSED FEES FOR HIS MORTGAGE LOAN**

66.     Plaintiff has a statutory right to receive accurate and timely information from Bank of America in its response to Plaintiff's request for information about his mortgage loan. 12 CFR § 1024.38(a)(1)(iii).  Section 1024.38 requires Bank of America to maintain policies and procedures for responding to requests for information that ensure accurate information is communicated to consumers.

67.     Also, Plaintiff has a statutory right to receive a clear and conspicuous disclosure from Bank of America about the fees and costs he is required to pay to reinstate his mortgage loan. 12 CFR § 1024.32(a)(1).

68.     By failing to respond with accurate information about the amounts owed by Plaintiff on his mortgage loan, Bank of America deprived Plaintiff of his statutory right to receive accurate information under RESPA.

69.     By failing to respond with a clear and conspicuous disclosure about the amounts owed by Plaintiff on his mortgage loan, Bank of America deprived Plaintiff of his statutory right to receive a clear and conspicuous reinstatement disclosure under RESPA.

**ADDITIONAL FACTUAL ALLEGATIONS REGARDING PLAINTIFF'S INJURY
CAUSED BY FRENKEL'S FDCPA AND FCCPA VIOLATIONS AND BANK OF
AMERICA'S FCCPA AND RESPA VIOLATIONS**

70.     By charging estimated fees and costs tacked on to the reinstatement of loan

amount, and by failing to provide information in a clear and conspicuous manner, Bank of

America and Frenkel frustrated Plaintiff's ability to reinstate his loan and caused him to incur

further attorney's fees and costs in trying to seek more information and understand the correct

reinstatement amount.

71.     Shortly after Frenkel was hired to initiate Mr. Paneque's foreclosure, Mr. Paneque

entered into a fee agreement with Christopher Legg of Legg, P.A.

72.     Under this agreement, Mr. Paneque agreed to pay and paid a $500 retainer for

Legg, P.A.'s legal representation in connection with his mortgage loan payments and avoiding

foreclosure.

73.     During the course of this representation, and after Frenkel and Bank of America's

January 2016 reinstatement of loan letter to Plaintiff demanding thousands of dollars in unclear

and estimated amounts, Plaintiff had the ability to pay the actual amount due to reinstate his

mortgage loan.

74.     Plaintiff did not pay the actual amount owed to reinstate his loan because: (1)

Plaintiff reasonably believed—and Defendants' January 2016 letter indicated—that the full

$45,066.73 was due to reinstate his loan and (2) this amount included unclear fees and costs, as

well as estimated legal fees and costs, that Plaintiff did not understand, and refused to pay.

75.     Had Defendants' January 2016 reinstatement of loan letters clearly demanded

only the amount actually owed to reinstate his loan—and not thousands of dollars in fees not

owed and ambiguously labeled—Plaintiff could have paid the actual amount owed to reinstate his loan.

76.     In turn, Plaintiff had to pay legal fees to Legg P.A. for consultation regarding the reinstatement amounts.  Plaintiff wanted to understand the confusing fees and costs in the January 2016 reinstatement of loan letter and only wished to pay the actual amount owed.

77.     Because Defendants demanded estimated and unclear fees, Plaintiff continued to incur interest on his mortgage loan and additional interest on the default-related charges.

78.     Because Defendants did not demand only actual amounts owed, Plaintiff experienced significant distress concerning foreclosure on his home.

79.     Plaintiff seeks to recover these additional damages he would not have incurred but for Bank of America's FCCPA and RESPA violations, and Frenkel's FDCPA and FCCPA violations.

80.     On or about February 22, 2016, the Plaintiff, through counsel, sent a cure letter to Bank of America and Frenkel. The letter is attached as Exhibit "E."

81.     After a reasonable amount of time, the Plaintiff filed this lawsuit because the Defendants failed to cure their violations of federal and Florida law.

## CLASS ACTION ALLEGATIONS

### Florida Class 1

82.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Bank of America's RESPA violations (the "Florida Class 1"), subject to modification after discovery and case development:

> All Florida residents to whom Bank of America responded to a written request for information that included estimated, unclear or inconspicuous fees, including but

not limited to "Other/Miscellaneous Fees" or "Litigation MGT Fees" during the applicable statute of limitations.

## Florida Class 2

83.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the

Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by

Frenkel's FDCPA violations (the "Florida Class 2"), subject to modification after discovery and

case development:

> All Florida residents to whom Frenkel, charged, collected, or attempted to collect "estimated" reinstatement of loan amounts during the applicable statute of limitations.

## Florida Class 3

84.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the

Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by

Defendants' FCCPA violations ("Florida Class 3"), subject to modification after discovery and

case development:

> All Florida residents to whom Bank of America or Frenkel charged, collected, or attempted to collect "estimated" reinstatement of loan amounts during the applicable statute of limitations

85.     Class members are identifiable through Defendants' records and payment

databases.

86.     Excluded from the Classes are: (1) Defendants; (2) any entities in which

Defendants have a controlling interest; (3) Defendants' agents and employees; (4) any Judge to

whom this action is assigned; and (5) any member of such Judge's staff and immediate family.

87.     Plaintiff proposes that he serve as class representative.

88.     Plaintiff and the Classes have all been harmed by the actions of Defendants.

89.     Numerosity is satisfied, as there are likely tens of thousands of class members. Individual joinder of these persons is impracticable.

90.     There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

a.     Whether Frenkel violated the FDCPA by charging monies not due;

b.     Whether Bank of America violated the RESPA by providing unclear, inconspicuous, and inaccurate information;

c.     Whether Defendants violated the FCCPA by charging monies not due;

d.     Whether Plaintiff and class members are entitled to actual or statutory damages as a result of Defendants' actions.

e.     Whether Plaintiff and class members are entitled to attorney's fees and costs; and

f.     Whether Defendants should be enjoined from engaging in such conduct in the future.

91.     Plaintiff's claims are typical of the claims of the Classes.

92.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions.

93.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

94.     The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications concerning individual class members.

**COUNT I AS TO BANK OF AMERICA'S VIOLATION OF THE REAL ESTATE
SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)
(Florida Class 1)**

95.      Bank of America is a "servicer" because it was responsible for "servicing" the

Plaintiff's mortgage loan when it would receive scheduled periodic payments from Plaintiff

pursuant to the terms of his mortgage loan and made payments of principal and interest from

those amounts under the terms of the loan. 12 U.S.C. § 2605(i)(3).

96.      Plaintiff's loan is a "federally related mortgage loan" because it is secured by a

first or subordinate lien a residential real property designed for the occupancy of one to four

families and was made in whole or in part by Bank of America, a lender with deposits or

accounts which are insured by the FDIC.

97.      As a servicer of a federally related mortgage loan, Bank of America must comply

with any regulation implementing the provisions of RESPA. *See* 12 U.S.C. § 2605(k)(1)(E).

98.      Plaintiff, through counsel, sent a written "request for information" to Bank of

America concerning his mortgage loan and the amount necessary for reinstatement of his loan.

12 CFR § 1024.36

99.      Bank of America, through Frenkel acknowledged receipt of Plaintiff's request for

information and responded to the Plaintiff's request with information listed in a form

reinstatement quote that contained illegal "estimated fees" not owed by Plaintiff and

"Other/Miscellaneous Fees" without identification or explanation as to why and for what they

were charged. *See* 12 CFR § 1024.36(d)(1)(i).

100.      Bank of America repeatedly sends borrowers the same type of reinstatement

quote that it sent to Plaintiff containing illegal "estimated fees" not owed by borrowers and

"Other/Miscellaneous Fees" listed without identification or explanation as to why and for what they were charged.

101.    Bank of America violated § 2605(k)(1)(E) when it failed to provide information to Plaintiff in a clear and conspicuous manner, as required by 12 CFR § 1024.32(a)(1), by charging for "estimated" fees not owed; "Other/Miscellaneous Fees"; and "Litigation MGT Fee[s]" and demanding Plaintiff pay these fees to reinstate his loan. 12 CFR § 1024.32(a)(1); 12 U.S.C. § 2605(k)(1)(E).

102.    Bank of America's violation of RESPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning his mortgage loan.

103.    Additionally, Plaintiff incurred attorney's fees and costs in having to respond to Defendants' reinstatement letter, which contained unclear, inaccurate, and inconspicuous information.

104.    As a result of Bank of America's pattern and practice of violating 12 C.F.R. § 1024.36(d)(1)(i); 12 CFR 1024.38(a), (b)(1)(i), and (b)(1)(iii), Plaintiff and class members are entitled to actual damages, plus statutory damages under 12 U.S.C. § 2605(f), together with reasonable attorney's fees and costs.

### COUNT II AS TO FRENKEL'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e(2)(A), 1692f(1)
### (Florida Class 2)

105.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased his home by mortgage in Florida.

106.    Defendant Frenkel is a "debt collector" as defined by 15 U.S.C. § 1692a(6) when it attempted to collect a debt from Plaintiff for reinstatement of loans. In its debt collection letter to Plaintiff, Defendant disclosed it was "attempting to collect a debt and that any information

obtained will be used for that purpose." Specifically, Frenkel is a third party debt collector on behalf of Plaintiff's mortgage with Bank of America.

107.    Frenkel engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when it sent the January 2016 debt collection letter to Plaintiff demanding money purportedly due for reinstatement of his loan to avoid foreclosure.

108.    Frenkel violated 15 U.S.C. § 1692e(2)(A) when it made false, deceptive, and misleading representations about the character and amount that Plaintiff owed to reinstate his loan to avoid foreclosure.

109.    Frenkel violated 15 U.S.C. § 1692f (1) when it charged estimated fees not owed and not expressly authorized by agreement.

110.    Frenkel's violation of the FDCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning his mortgage loan. Additionally, Plaintiff incurred attorney's fees and costs in having to follow up on Frenkel's letter, which contained unclear, inaccurate, and inconspicuous information, and he suffered the imminent risk of having to pay an illegal amount.

111.    As a result of Frenkel's violation of 15 U.S.C. § 1692e and15 U.S.C. § 1692f, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

### COUNT III AS TO FRENKEL'S VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)
### (Florida Class 3)

112.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased his home by mortgage.

113.    Frenkel is a "person" as defined under the FCCPA.

114.     Frenkel knowingly attempted to collect an illegitimate debt and attempted to enforce, claimed, and asserted a known non-existent legal right to a consumer debt as defined by Fla. Stat. § 559.55(6) when Frenkel made false, deceptive, and misleading representations about the character and amount that Plaintiff owed to reinstate his loan to avoid foreclosure. *Id.* § 559.72(9) (prohibiting the collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *cf. Prescott v. Seterus, Inc.*, 635 Fed.Appx. 640, 647 (11th Cir. 2015) (holding that charging "estimated" attorney's fees not agreed to in the mortgage agreement violated the FCCPA and FDCPA); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) (holding that certain fees violate the FDCPA where they are not supported by the language of the consumer agreement underlying the debt at issue); Fla. Stat. § 559.77(5) ("In applying and construing [the FCCPA], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.").

115.     Frenkel maintains computerized records that reflect the timing and nature of all costs and fees charged to consumers on their mortgage loans.

116.     Frenkel knew that the estimated fees were illegitimate and could not be collected because Frenkel knew that it had not performed any legal work for the estimated fees.

117.     Frenkel knew that the estimated costs were illegitimate and could not be collected because Frenkel knew that it had not incurred or paid any of the estimated costs.

118.     Frenkel knew that charging estimated fees and costs was illegitimate because at the time of its reinstatement letter to Plaintiff there were several trade publications that had issued warnings to debt collectors and loan servicers that charging estimated fees and costs was not allowed.

119.     Frenkel knew that charging estimated fees and costs was illegitimate because the *Prescott* decision had been issued a month prior and was widely publicized in its industry.

120.     Frenkel knew that charging estimated fees and costs was illegitimate because it routinely credits and refunds estimated fees and costs collected from loan borrowers who pay it reinstatement amounts due.

121.     Frenkel's acts of illegally attempting to collect a debt from Plaintiff and deliberately charging estimated fees or costs constitutes a knowing violation of § 559.72(9) of the FCCPA.

122.     Frenkel's violation of the FCCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning his mortgage loan. Additionally, Plaintiff incurred attorney's fees and costs in having to dispute amounts which were unclear and inaccurate, and he suffered the imminent risk of having to pay an illegal amount.

123.      As a result of Frenkel's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

### COUNT IV AS TO BANK OF AMERICA'S VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)
### (Florida Class 3)

124.     Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased his home by mortgage.

125.     Bank of America is a "person" as defined under the FCCPA.

126.     Bank of America knowingly attempted to collect an illegitimate debt and attempted to enforce, claimed, and asserted a known non-existent legal right to a consumer debt

as defined by Fla. Stat. § 559.55(6) when Bank of America, through Frenkel, made false,

deceptive, and misleading representations about the character and amount that Plaintiff owed to

reinstate his loan to avoid foreclosure. *Id.* § 559.72(9) (prohibiting the collection, or attempts at

collection, of debts known not to exist and prohibiting the assertion of a legal right known not to

exist); *cf. Prescott v. Seterus, Inc.*, 635 Fed.Appx. 640, 647 (11th Cir. 2015) (holding that

charging "estimated" attorney's fees not agreed to in the mortgage agreement violated the

FCCPA and FDCPA); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir.

2014) (holding that certain fees violate the FDCPA where they are not supported by the language

of the consumer agreement underlying the debt at issue); Fla. Stat. § 559.77(5) ("In applying and

construing [the FCCPA], due consideration and great weight shall be given to the interpretations

of the Federal Trade Commission and the federal courts relating to the federal Fair Debt

Collection Practices Act.").

127.    Bank of America is required to have policies and procedures in place to provide

accurate information to consumers about the fees and costs owed to reinstatement their loan.

128.    Bank of America maintains computerized records that reflect the timing and

nature of all costs and fees charged to consumers on their mortgage loans.

129.    Bank of America knew that the estimated fees were illegitimate and could not be

collected because Bank of America had not paid Frenkel or any other law firm for any legal

work performed for the estimated fees.

130.    Bank of America knew that the estimated costs were illegitimate and could not be

collected because Bank of America knew that it had not incurred or paid any of the estimated

costs.

131.    Bank of America knew that charging estimate fees and costs was illegitimate because at the time of its reinstatement letter to Plaintiff, Bank of America had entered the Consent Judgment that did not allow it to collect legal fees or costs unless the fee or cost was for services actually rendered.

132.    Bank of America knew that charging estimated fees and costs was illegitimate because at the time of its reinstatement letter to Plaintiff there were several trade publications that had issued warnings to mortgage lenders and loan servicers that charging estimated fees and costs was not allowed.

133.    Bank of America knew that charging estimated fees and costs was illegitimate because the *Prescott* decision had been issued a month prior and was widely publicized in its industry.

134.    Bank of America knew that charging estimated fees and costs was illegitimate because it routinely credits and refunds estimated fees and costs collected from loan borrowers who pay it reinstatement amounts due.

135.    Bank of America's acts of illegally attempting to collect a debt from Plaintiff and deliberately charging estimated fees or costs constitutes a knowing violation of § 559.72(9) of the FCCPA.

136.    Bank of America's violation of the FCCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning his mortgage loan. Additionally, Plaintiff incurred attorney's fees and costs in having to dispute amounts which were unclear, inaccurate and estimated, and he suffered the imminent risk of having to pay an illegal amount.

137.     As a result of Bank of America's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

### JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

138.     Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

139.     Plaintiff reserves the right to amend his Complaint and add a claim for punitive damages.

### RELIEF REQUESTED

WHEREFORE. Plaintiff, himself and on behalf of the Classes, respectfully requests this Court to enter judgment against Defendants for all of the following:

a. That Plaintiff and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.  That Plaintiff and all class members be awarded statutory damages on each of his claims;

c. That Plaintiff and all class members be awarded costs and attorney's fees;

d. That the Court enter a judgment permanently enjoining Defendants from charging and/or collecting debt in violation of the FDCPA, FCCPA, and RESPA;

e. That, should the Court permit Defendants to continue charging and/or collecting debt, it enter a judgment requiring them to adopt measures to ensure FDCPA, FCCPA, and RESPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that Defendants comply with those measures;

f.  That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the FDCPA, FCCPA, and RESPA;

g.  That the Court enter an order that Defendants and their agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

h.  That the Court certify Plaintiff's claims and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure; and

i.  Such other and further relief as the Court may deem just and proper.

Dated: November 3, 2016                          Respectfully Submitted,

/s/ *James L. Kauffman*
James L. Kauffman (Fla. Bar. No. 12915)
Bailey & Glasser LLP
1054 31st Street, NW Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 342-2103
Email: jkauffman@baileyglasser.com

Darren R. Newhart, Esq.
Florida Bar No.: 0115546
E-mail: darren@cloorg.com
J. Dennis Card Jr., Esq
Florida Bar No.: 0487473
E-mail:DCard@Consumerlaworg.com
Consumer Law Organization, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132

Christopher W. Legg, P.A.
3837 Hollywood Blvd., Suite B
Hollywood, FL 33021
Telephone: (954) 235-3706
Facsimile: (954) 927-2451
Email: ChrisLeggLaw@gmail.com
*Counsel for Plaintiff and the Putative Class*