UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IGNACIO PANEQUE, individually and on
behalf of himself and all others similarly
situated,

        Plaintiff,

    v.

BANK OF AMERICA, N.A., and
FRENKEL LAMBERT WEISS WEISMAN
& GORDAN LLP,

        Defendants.

Civil Action No. 1:16-cv-21212-DPG

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND ACCOMPANYING MEMORANDUM OF LAW

Brooks R. Brown (*pro hac vice*)
Keith Levenberg (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
bbrown@goodwinprocter.com
klevenberg@goodwinprocter.com

James Randolph Liebler, II
Andrew Kemp-Gerstel
LIEBLER GONZALEZ & PORTUONDO PA
44 W. Flagler St., 25th Fl.
Miami, Fla. 33130
Tel.: (305) 379-9626
jrlii@lgplaw.com
akg@lgplaw.com

*Counsel for Defendant Bank of America, N.A.*

Richard M. Jones
Joseph H. Lowe
Klein Glasser Park & Lowe, P.L.
9130 S. Dadeland Blvd., Ste. 2000
Miami, FL 33156
Tel.: (305) 670-3700
jonesr@kgplp.com
lowej@kgplp.com

*Counsel for Defendant Frenkel Lambert
Weiss Weisman & Gordon, LLP*

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 3

ARGUMENT .......................................................................................................... 5

    I.     PLAINTIFF PLEADS NO HARM AND THUS LACKS ARTICLE III
          STANDING. ............................................................................................. 5

    II.    PLAINTIFF'S CLAIMS ALSO FAIL AS A MATTER OF LAW. ............................ 9

          A.   The *Prescott* Case Does Not Help Plaintiff Avoid Dismissal............................. 9

          B.   Plaintiff States No Valid Claim Under the FCCPA as a Matter of Law. ........... 10

               1.   State-Law Claims Are Barred by Florida's Litigation Privilege................ 10

               2.   Plaintiff Fails to Plead the Requisite Scienter. ........................................... 12

          C.   Plaintiff Fails to State a Claim Under RESPA Because Plaintiff Fails to
              Plead Either a Valid Request or an Inadequate Response................................. 14

          D.   Plaintiff's FDCPA Claim Against Frenkel Fails as a Matter of Law................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages(s)**

*Acosta v. Gustino*,
   No. 11-1266, 2013 WL 6069862 (M.D. Fla. Nov. 18, 2013) ...................................................11

*Andrade v. Carrington Mortg. Servs., LLC*,
   No. 15-713, 2015 WL 7108119 (W.D. Mich. Nov. 13, 2015) ...............................................16

*Anselmi v. Shendell & Assocs., P.A.*,
   No. 12-61599, 2015 WL 11121357 (S.D. Fla. Jan. 7, 2015)...................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................6

*Bishop v. Ross Earle & Bonan, P.A.*,
   817 F.3d 1268 (11th Cir. 2016) ...............................................................................19, 20

*Blake v. Seterus, Inc.*,
   No. 16-21225, 2016 U.S. Dist. LEXIS 123969 (S.D. Fla. Sept. 13, 2016) .................... *passim*

*Church v. Accretive Health, Inc.*,
   No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016)......................................................8

*Doe v. Chao*,
   306 F.3d 170 (4th Cir. 2002) ...............................................................................................17

*Dolan v. Select Portfolio Serv.*,
   No. 03-3285, 2016 U.S. Dist. LEXIS 101201 (E.D.N.Y. Aug. 2, 2016)..................................8

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*,
   950 So. 2d 380 (Fla. 2007)....................................................................................................11

*Evans v. Nationstar Mortg., LLC*,
   No. 15-1213, 2015 WL 6756255 (E.D. Cal. Nov. 5, 2015)....................................................15

*Evory v. RJM Acquisitions Funding L.L.C.*,
   505 F.3d 769 (7th Cir. 2007) ................................................................................................20

*FEC v. Akins*,
   524 U.S. 11 (1998)..................................................................................................................8

*Francis v. GMAC Mortg.*,
   No. 06-15777, 2007 WL 1648884 (E.D. Mich. June 6, 2007) ...............................................18

*Frankenfield v. MicroBilt Corp.*,
No. 14-1112, 2016 U.S. Dist. LEXIS 137944 (M.D. Pa. Oct. 3, 2016) ...................................8

*Gardner v. Bay Area Credit Servs., LLC*,
No. 15-1108, 2015 WL 5829692 (M.D. Fla. Oct. 2, 2015) ....................................................12

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) .............................................................................................10

*Jackson v. Abendroth & Russell*,
2016 WL 4942074 (S.D. Iowa Sept. 12, 2016) ......................................................................8

*Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004) .....................................................................................3, 8, 11

*Jackson v. Ocwen Loan Servicing, LLC*,
No. 11-60560, 2012 WL 882493 (S.D. Fla. Mar. 14, 2012)..................................................17

*Kaymark v. Bank of Am., N.A.*,
783 F.3d 168 (3d Cir. 2015)....................................................................................................6

*Kinsey v. MLH Fin. Servs., Inc.*,
509 F. App'x 852 (11th Cir. 2013) ........................................................................................10

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States
Fire Ins. Co.*,
639 So. 2d 606 (Fla. 1994).....................................................................................................11

*Long v. Residential Credit Sols., Inc.*,
No. 15-80590, 2015 WL 4983507 (S.D. Fla. Aug. 21, 2015) ...............................................16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..................................................................................................................5

*McLean v. GMAC Mortg. Corp.*,
595 F. Supp. 2d 1360 (S.D. Fla. 2009) .................................................................................17

*Miljkovic v. Shafritz & Dinkin, P.A.*,
791 F.3d 1291 (11th Cir. 2015) .............................................................................................19

*Newman v. Ormond*,
396 F. App'x 636 (11th Cir. 2010) ........................................................................................19

*Norris v. Bayview Loan Servicing, LLC*,
No. 15-6413, 2015 U.S. Dist. LEXIS 151353 (C.D. Cal. Oct. 25, 2015)..............................15

*Ordonez v. Green Tree Servicing LLC*,
No. 14-01284, 2016 WL 3658684 (D. Nev. July 8, 2016) ....................................................18

*Penner v. Indymac Bank, F.S.B.*,
   No. 13-2539, 2013 WL 5970731 (M.D. Fla. Nov. 8, 2013) ................................................16

*Prescott v. Seterus, Inc.*,
   635 F. App'x 640 (11th Cir. Dec. 3, 2015) .................................................... 9-10, 13

*Prescott v. Sterus, Inc.*,
   No. 13-62338, 2016 WL 4257517 (S.D. Fla. July 7, 2016)................................. 9-10, 13, 19

*Public Citizen v. Dep't of Justice*,
   491 U.S. 440 (1989)................................................................................................8

*Reese v. JPMorgan Chase & Co.*,
   686 F. Supp. 2d 1291 (S.D. Fla. 2009) .............................................................12

*Refroe v. Nationstar Mortg., LLC*,
   No. 14-314, 2015 WL 541495 (S.D. Ala. Feb. 10, 2015)......................................16

*Renfroe v. Nationstar Mortg., LLC*,
   822 F.3d 1241 (11th Cir. 2016) .........................................................................17

*Roth v. CitiMortgage Inc.*,
   756 F.3d 178 (2d Cir. 2014)......................................................................... 14-15

*Rourk v. Bank of Am. Nat. Ass'n*,
   587 F. App'x 597 (11th Cir. 2014) ......................................................................7

*Russell v. Nationstar Mortg., LLC*,
   No. 14-61977, 2015 WL 5029346 (S.D. Fla. Aug. 26, 2015) ...........................8, 17

*Sharp v. Deutsche Bank Nat'l Trust Co.*,
   No. 14-369, 2015 WL 4771291 (D.N.H. Aug. 11, 2015) ....................................16

*Smith v. Nationstar Mortg.*,
   No. 15-13019, 2015 WL 7180473 (E.D. Mich. Nov. 16, 2015)............................16

*Spokeo v. Robins*,
   578 U.S. ---, 136 S. Ct. 1540 (2016).......................................................2, 5, 7, 8

*Sterk v. Redbox Automated Retail, LLC*,
   770 F.3d 618 (7th Cir. 2014) ...............................................................................17

*Williams v. Streeps Music Co.*,
   333 So. 2d 65 (Fla. Dist. Ct. App. 1976) .............................................................13

*Wood v. GC Servs., LP*,
   No. 10-1979, 2012 WL 995207 (M.D. Fla. Mar. 23, 2012) .................................17

*Zaychick v. Bank of Am., N.A.*,
No. 15-80336, 2015 WL 7077371 (S.D. Fla. Nov. 13, 2015) .................................................15

*Zia v. CitiMortgage, Inc.*,
No. 15-23026, 2016 WL 5369316 (S.D. Fla. Sept. 26, 2016) ...................................................8

**Statutes, Rules, and Regulations**

12 U.S.C. § 2605 ...............................................................................................................16, 17

Fla. Stat. § 559.72 ...................................................................................................................12

12 C.F.R. § 1024.32 ...........................................................................................................3, 15

12 C.F.R. § 1024.36 ..............................................................................................3, 14, 15, 16

12 C.F.R. § 1024.38 ................................................................................................................16

24 C.F.R. § 3500.21 ................................................................................................................14

78 Fed. Reg. 10696 (Feb. 14, 2013) .......................................................................................16

FED. R. CIV. P. 12(b)(6) ...........................................................................................................1

Defendants Bank of America, N.A. ("Bank of America") and Frenkel Lambert Weiss Weisman & Gordon LLP ("Frenkel") hereby move to dismiss the amended complaint (AC, ECF No. 33) of Plaintiff Ignacio Paneque pursuant to FED. R. CIV. P. 12(b)(6).

## PRELIMINARY STATEMENT

This is Plaintiff's second attempt to state cognizable claims. By way of its October 20, 2016 Order (ECF No. 32), this Court rejected his first as an improper shotgun pleading. Now, despite the chance to attempt to remedy the numerous pleading defects identified by Defendants in their prior motions to dismiss, Plaintiff has failed to do so. It is thus evident that dismissal with prejudice is appropriate—a conclusion reinforced by the decision of another court in this District dismissing a case just like this one brought by the same plaintiffs' counsel for lack of standing. *See Blake v. Seterus, Inc.*, 2016 U.S. Dist. LEXIS 123969 (S.D. Fla. Sept. 13, 2016).

Mortgage loan balances are a moving target and can (and do) change from day to day as a result of routine events such as interest accruing, payments coming due, or, in the case of a borrower in foreclosure, legal fees and default charges being assessed. This presents a practical challenge when a borrower in foreclosure, like Plaintiff, requests a statement of the amount needed to reinstate a loan. The servicer can either provide current figures—knowing they will be out of date and inaccurate by the time the borrower sees them—or it can do what Defendants are alleged to have done here—provide Plaintiff "with the convenience of an extended 'Good Through' date" by including in the reinstatement amount "estimated expenses . . . which will become due during the 'Good Through' date, but which [are] not yet due," while clearly disclosing that Plaintiff "May Owe Less" than the quoted amount." AC Ex. C at 6.

In December of 2015, Plaintiff had not made a loan payment in two years. As a result, he was a defendant in a foreclosure action brought against him by Bank of America in December

2014 in state court. AC ¶ 39. In connection with that foreclosure litigation, Plaintiff's attorneys sent a request to Bank of America's foreclosure attorneys (Frenkel) for "an itemization of the amount Plaintiff needed to pay to reinstate his loan." *Id.* ¶ 40. Plaintiff does not allege he had any intention whatsoever of reinstating his loan—rather, the only evident purpose of asking for the reinstatement quote was to generate the basis for this lawsuit.

The gravamen of Plaintiff's multi-count amended complaint is that the reinstatement quote was improper because it included the full arrearage Plaintiff had accrued to date along with "estimated" fees that were projected to be incurred during the month-long period that the reinstatement figures were "good through." Plaintiff's theory is that this somehow misrepresented the amount actually due. AC ¶ 48. But there cannot be any serious claim of misrepresentation where, as here, the quote expressly disclosed that it included fees "not yet due" solely to offer "the convenience of an extended 'Good Through' date," and that Plaintiff should "confirm[]" the correct amount "prior to remitting any checks." AC Ex. C.

Plaintiff, of course, never remitted any checks or took any other action based on the reinstatement quote, beyond bringing this lawsuit. Under these alleged facts, Plaintiff does not even present a constitutionally sufficient "case or controversy." As the Supreme Court recently confirmed in *Spokeo v. Robins*, 578 U.S. ---, ---, 136 S. Ct. 1540, 1549-50 (2016), if "a bare procedural violation" of a consumer protection statute "results in no harm," there is no standing. Here, Plaintiff has not supplied any factual matter to suggest he was harmed in any way.

Even if the Court were to credit Plaintiff's conclusory allegations that he was harmed, Plaintiff's statutory causes of action all fail to state a claim upon which relief can be granted. First, Plaintiff's claims under Florida law (Counts III and IV) are barred by Florida's litigation privilege, which "affords absolute immunity for acts occurring during the course of judicial

proceedings." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004). Second, while Plaintiff purports to assert a federal RESPA claim against Bank of America based on an allegedly inadequate response to a "Qualified Written Request" (Count I), he fails to allege the necessary predicate to such a claim (that he ever made a QWR in the first place), fails to allege the predicates for actual or statutory damages, and fails to allege how the Bank's response was inadequate under a regulation that merely governs the "form," not the substance, of the response. 12 C.F.R. §§ 1024.36(d)(1)(i), 1024.32(a)(1). Finally, Plaintiff's FDCPA claim against Frenkel (Count II) remains defective because its response was not "collection activity" within the scope of the statute. This Court has already dismissed Plaintiff's complaint once. It should not hesitate to do so again—this time with prejudice—for all the reasons detailed below.

## BACKGROUND[1]

Plaintiff borrowed $262,800 from Bank of America in 2006 to purchase property in Port Saint Lucie, Florida. AC ¶ 35. Plaintiff alleges that he "made continuous payments on his mortgage but fell behind sometime before December 28, 2015" (actually, *significantly* before— Plaintiff had missed 24 monthly payments as of December 27, 2015). *Id.* at ¶¶ 38-39 & Ex. C.

As a result, on December 16, 2014, Bank of America filed a foreclosure proceeding against Plaintiff and his co-mortgagor Sonia Paneque (not a party to the instant lawsuit) in state court. AC ¶ 39. While that suit was pending, on December 17, 2015, the law firm "hired . . . to defend [Plaintiff] in the foreclosure" "sent [an] email to Frenkel requesting that Bank of America provide an itemization of the amount Plaintiff needed to reinstate his loan." *Id.* at ¶ 40. Frenkel responded with a reinstatement quote "Good Through 01/22/2016." *Id.* Ex C at 5.

The quote shows arrearages of $36,107.58 and $8,959.15 in fees and expenses, most

---

[1] As they must for purposes of this motion, Defendants assume the truth of the complaint's factual allegations, reserving their right to contest those facts at a later date if necessary.

related to the ongoing foreclosure proceeding. *Id*. Thus, the reinstatement amount, assuming payment at the expiration of the January 22, 2016 "Good Through" date, was $45,066.73. *Id*. Recognizing that payment could occur earlier, however, the letter disclosed that "[t]he reinstatement amount is subject to change for various reasons" and said, in boldface, all-capital letters, "**ALL FIGURES MUST BE CONFIRMED, WITH THIS OFFICE, PRIOR TO REMITTING ANY CHECKS.**" *Id*. at 2. It also stated:

> **(3) Disclaimer About *TOTAL DUE - You May Owe Less:***
> - You may owe less if a recently mailed payment has not yet posted to this account -- (Please **do not** place a stop payment on any check).
> - To provide you with the convenience of an extended 'Good Through' date, the *'Total Due'* (see page 2) may include estimated expenses and fees, any additional payment which will become due during the 'Good Through' date, but which is not yet due, and other anticipated future disbursements.
> - You will receive a <u>refund</u> if you pay the 'Total Due' and the fee(s) or expense(s) have not been incurred at the time you pay. However, we will retain and apply any regular monthly payments that are not yet due.

*Id*. at 6. Despite the disclosures that Plaintiff "may owe less" and should "confirm[]" the amount due "prior to remitting any checks," and that estimates were only included to provide Plaintiff "with the convenience of an extended 'Good Through' date" (*id*. at 2, 6), Plaintiff asserts that the reinstatement calculation "demanded the full amount, including illegal 'estimated' amounts, as immediately due." AC ¶ 60. Based on this false premise, he purports to assert claims against Bank of America under RESPA (Count I) and the Florida Consumer Collection Practices Act (Count III), and against Frenkel under the FDCPA (Count II) and FCCPA (Count IV).

Plaintiff filed his complaint on April 6, 2016. ECF No. 1. On October 20, this Court dismissed the complaint as a "shotgun pleading." ECF No. 32. On November 3, Plaintiff filed an amended complaint purporting to remedy this defect by striking express incorporated-by-reference sentences, though without adding any facts capable of overcoming a motion to dismiss.

**ARGUMENT**

**I.  PLAINTIFF PLEADS NO HARM AND THUS LACKS ARTICLE III STANDING.**

Standing to sue in federal court requires, *inter alia*, a concrete injury fairly traceable to the challenged conduct of the defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court recently emphasized, in the context of statutory claims analogous to those made here, that a "bare procedural violation" that causes no harm is insufficient to satisfy the concrete-injury requirement. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Here, Plaintiff has pled no concrete injury traceable to the alleged statutory violations.

Recognizing the need to plead his standing to sue, Plaintiff makes three allegations of injury, each wholly conclusory: that Defendants (i) "frustrated Plaintiff's ability to reinstate his loan," (ii) "caused him to incur further attorney's fees and costs," and (iii) "deprived Plaintiff of his statutory right to receive accurate information" and "a clear and conspicuous reinstatement disclosure." AC ¶¶ 68-70. Another court in this District, in another reinstatement-quote lawsuit brought by the same lawyers representing Plaintiff here, has already found the identical allegations insufficient to plead Article III standing. Judge King (correctly) held that "[c]onclusions, such as the claim that Defendant's conduct 'frustrated the Plaintiff's ability to reinstate his loan and caused him to incur further attorney's fees and costs,' must be supported by factual allegations. To establish causation, Plaintiff must allege *facts* showing that but for Defendant's wrongful conduct he would not have been frustrated in his ability to reinstate the loan." *Blake*, 2016 U.S. Dist. LEXIS 123969, at *6, As there were no such facts alleged in *Blake*, Judge King dismissed the complaint "for failure to plead standing." *Id*. at *1.

The same result should occur here. Plaintiff's allegation that he was "frustrated" in his ability to reinstate his loan is insufficient to plead standing because it is neither plausible nor supported by any facts. To raise a right to relief "above the speculative level," *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead facts indicating he would have reinstated his loan "but for" the estimated fees. *Blake*, 2016 U.S. Dist. LEXIS 123969, at *6; *see also Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 181 (3d Cir. 2015) (holding that plaintiff alleging overcharged fees failed to plead actual damages absent facts suggesting he "would have cured his debt but for those fees"). Plaintiff pleads no such thing. Instead, he merely says he "had the ability to pay"—but "refused" to do so. AC ¶¶ 73-74. But *Blake* and *Kaymark* make clear that Plaintiff must allege that he *would* have reinstated to plead an injury—"*could* have" is not enough. Plaintiff's failure to allege this is telling, particularly given that he was fully aware of these cases before crafting his amended pleading and *still* was unable to plead the magic words.

Beyond this, the naked allegation that "Plaintiff had the ability to pay the actual amount due to reinstate his mortgage loan" (*id*. at ¶ 73) is unsupported and implausible. There are no factual allegations pleading, for example, that Plaintiff had cash on hand or other resources sufficient to pay in any amount. Moreover, given that Plaintiff had not made a single mortgage payment in over two years, his naked allegation that he had (but did not exercise) the ability to make a lump $45,000 payment (or even a lump payment a few thousand dollars short of $45,000) is implausible and strains credulity. If Plaintiff had the ability to make *all* of his mortgage payments over the previous two years, why didn't he make *any* of them?

Plaintiff's next "injury" allegation—that the reinstatement quote caused him "to incur further attorney's fees and costs in trying to seek more information and understand the correct reinstatement amount" (AC ¶ 70)—fails, as in *Blake*, to plead an injury in fact. *See Blake*, 2016 U.S. Dist. LEXIS 123969, at *6 (rejecting identical allegation). The only way in which Plaintiff could have been spared the costs of defending the foreclosure action is if he otherwise would have reinstated his loan (thus securing the dismissal of the action) but was somehow thwarted in

doing so. But, as discussed above, no such scenario is plausibly alleged. Nor are there any facts pled that would allow this Court to infer that any attorneys' fees and costs were incurred as a result of any alleged misdeeds by Defendants rather than as a result of Plaintiff's own default on his mortgage. *See Rourk v. Bank of Am. Nat. Ass'n*, 587 F. App'x 597, 600 (11th Cir. 2014) (plaintiff's "nonpayment is fatal" because "her 'alleged injury was solely attributable to [her] own acts or omissions'"). Plaintiff tries to plead around this defect by alleging, for the first time in the amended complaint, that he "had to pay legal fees to Legg P.A." because "Plaintiff wanted to understand the confusing fees and costs . . . and only wished to pay the actual amount owed." AC ¶ 76. But the implausibly self-serving allegation that Plaintiff "wished to pay the actual amount owed" is belied by the fact that Plaintiff made no effort to pay *any* amount. And a claim that Plaintiff asked a lawyer to advise him on the reinstatement quote is not a claim of any harm traceable to the alleged statutory violation by Defendants. Plaintiff's lawyers asked for the quote in the first place. Naturally, they would advise him on it. This is a consequence of being in foreclosure litigation, not a consequence of any feature of the letter itself.

Plaintiff's final "injury" theory—that Bank of America somehow "deprived Plaintiff of his statutory right to receive accurate information" (AC ¶ 68) and "a clear and conspicuous reinstatement disclosure" (AC ¶ 69)—does not fare any better. This is another theory properly rejected as "conclusory" in *Blake*. 2016 U.S. Dist. LEXIS 123969, at *6. Indeed, in *Spokeo*, the Supreme Court rejected the notion that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," and reaffirmed that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation is insufficient to create Article III standing." 136 S. Ct. at 1549. So too here. Plaintiff does not allege how a purportedly

"[in]conspicuous" disclosure caused him injury where he concededly had no intention of acting on the information even if he had received it in the form he contends was required.[2]

Plaintiff previously argued that his situation is like the cases cited in *Spokeo* where the Court recognized an "inability to obtain information" as a cognizable harm in certain instances. *See* 136 S. Ct. at 1549-50 (citing *FEC v. Akins*, 524 U.S. 11 (1998); *Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989)). This same argument was rejected in *Blake*. 2016 U.S. Dist. LEXIS 123969, at *5-6. And numerous courts have distinguished *Akins* and *Public Citizen* on the ground that both involved statutes designed to "promote public interests" in the flow of "political information"—thus, the inability to obtain information "was the harm Congress intended to curb when it passed the particular statutory provision at issue."[3] That is not the case with the statutes invoked here, which are meant to curb, *e.g.*, "abusive debt collection practices."[4] Moreover, Plaintiff here does not allege "the violation of a statutory right to receive information one is entitled to receive." *Zia v. CitiMortgage, Inc.*, 2016 WL 5369316, at *6 (S.D. Fla. Sept. 26, 2016). He alleges instead that certain information he *admittedly* received was not as "conspicuous" as he thinks it should have been—but alleges no harm traceable to that.

---

[2] *See Russell v. Nationstar Mortg., LLC*, 2015 WL 5029346, at *7 (S.D. Fla. Aug. 26, 2015) ("Nationstar could not have provided Plaintiffs with any information that would have mitigated the damages they claim to have suffered.").

[3] *Frankenfield v. MicroBilt Corp.*, 2016 U.S. Dist. LEXIS 137944, at *15-16 (M.D. Pa. Oct. 3, 2016); *Dolan v. Select Portfolio Serv.*, 2016 U.S. Dist. LEXIS 101201, at *11-12 (E.D.N.Y. Aug. 2, 2016); *Jackson v. Abendroth & Russell*, 2016 WL 4942074, at *9 (S.D. Iowa Sept. 12, 2016).

[4] *Jackson*, *supra* n.3. Plaintiff can also be expected to rely on the non-precedential opinion in *Church v. Accretive Health, Inc.*, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016), upholding standing in spite of *Spokeo*. But *Church* was no obstacle to *Blake* reaching the result that it did, and it is no obstacle here, either, for the reasons noted above.

## II.  PLAINTIFF'S CLAIMS ALSO FAIL AS A MATTER OF LAW.

### A.  The *Prescott* Case Does Not Help Plaintiff Avoid Dismissal.

Plaintiff's reliance on the non-precedential opinion in *Prescott v. Seterus, Inc.*, 635 F. App'x 640 (11th Cir. Dec. 3, 2015), as a purported basis for this suit is misplaced. The facts of *Prescott* negate Plaintiff's contention that this case is "remarkably similar." AC ¶ 54.

In *Prescott*, the plaintiff "was in default" and his loan servicer had "prepared to initiate foreclosure proceedings." 635 F. App'x at 642. He received a letter "showing the total amount he needed to pay for his loan to be reinstated," which included "$3,175 in 'estimated' attorney's fees." *Id.* at 643. Prescott "paid the full reinstatement balance," successfully reinstated his loan, and was "refunded . . . the $3,175 in estimated legal fees" because he had managed to reinstate the loan *before* the fees were incurred. *Id.* Prescott then filed suit alleging "that the inclusion of estimated attorney's fees in his reinstatement balance" violated the FDCPA. *Id.* The district court granted summary judgment to the servicer, but the Eleventh Circuit reversed. Prescott had also asserted a claim under the Florida Consumer Collections Practice Act (FCCPA), but the Eleventh Circuit did not reach that claim and remanded it for the district court to address "in the first instance." 635 F. App'x at 646. Against this background, Plaintiff's claim that *Prescott* is "remarkably similar" to this case (AC ¶ 54) cannot withstand scrutiny.

First: The FCCPA claim Plaintiff advances here was not addressed by the Eleventh Circuit at all. The Eleventh Circuit remanded the claim to "the district court to consider . . . in the first instance on remand." 635 F. App'x at 646. When the district court actually *did* consider the FCCPA cause of action on remand, it found *against* the plaintiff, reasoning:

> Ultimately, the fact that Seterus violated the law is not the same as proof that Seterus knew that it violated the law. To rule otherwise would be to render the requisite "actual knowledge" element of the FCCPA superfluous. . . . In other words, Prescott does not prevail in this suit simply by virtue of Seterus' violative conduct. Instead, the FCCPA "requires a plaintiff to demonstrate that the debt collector defendant possessed actual

knowledge" that the conduct was violative." . . . [T]he FCCPA does not hold a debt collector liable for constructive knowledge, *i.e.*, that Seterus should have known that its conduct violated the statute. Because it is axiomatic that constructive knowledge is not actual knowledge, even assuming Plaintiff's argument is true, any such finding would be insufficient to impose liability under Florida law.

*Prescott*, 2016 WL 4257517, at *4, 9. That same reasoning applies here. *See infra* Part II.B.2.

Second: The plaintiff in *Prescott* was *not* in the middle of a litigated foreclosure proceeding when he received the reinstatement quote. 635 F. App'x at 642. Plaintiff here was and is. *See* AC ¶ 39. This is a highly material difference, because the absolute litigation privilege, which was not at issue in *Prescott*, bars Plaintiff from filing suit based on communications related to ongoing litigation like the foreclosure proceeding. *See infra* Part II.B.1.

Third: The reinstatement letter in *Prescott* did not disclose that the estimated fees were "not yet due." The letter here did. AC Ex. C. This negates Plaintiff's conclusory allegation that Defendants demanded "'estimated' amounts[] as immediately due." *Id*. at ¶ 60; *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (court need not accept as true allegations contradicted by documents cited in the complaint); *see also infra* Parts II.C & II.D.

Fourth: The plaintiff in *Prescott* actually made his reinstatement payment and cured his default. Plaintiff here did not. He does not even allege that he was willing to do so, even without the inclusion of the challenged "estimated" fees. This material difference negates Plaintiff's conclusory claim of injury. *See infra* Part II.C.

To state a claim here, Plaintiff must plead entirely different legal elements from the plaintiff in *Prescott*, based on entirely different facts. As set forth below, he has failed to do so.

**B.  Plaintiff States No Valid Claim Under the FCCPA as a Matter of Law.**

***1.   State-Law Claims Are Barred by Florida's Litigation Privilege.***

"In Florida, absolute immunity attaches to any act that occurs during the course of a judicial proceeding so long as the act has some relation to the proceeding." *Kinsey v. MLH Fin.*

-10-

*Servs., Inc.*, 509 F. App'x 852, 853-54 (11th Cir. 2013). The privilege applies to all state-law causes of action, "whether they were initiated under common law or statute." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). The litigation privilege forecloses Plaintiff's FCCPA claims because the challenged reinstatement letter not only had "some" but was *directly* related to Plaintiff's foreclosure proceeding.

Bank of America filed a foreclosure action against Plaintiff on December 16, 2014 in state court. AC ¶ 39. Plaintiff avers that he "hired the law firm of Christopher W. Legg, P.A. . . . to defend him in the foreclosure," and that the firm made the reinstatement request to Frenkel. AC ¶ 40. Consistent with the litigation-related context in which the request was made, the reinstatement letter sent to Plaintiff's counsel stated that, if Plaintiff reinstated his loan, Frenkel would have "undertake[n] to have the [foreclosure] action discontinued and the notice of pendency cancelled." *Id*. Ex. C. These communications—between a plaintiff (Bank of America) and defendant (Paneque) in pending state-court litigation—are exactly the type of communications the litigation privilege is intended to immunize. Indeed, the letter reflects the type of litigation-related communication that occurs between opposing lawyers in cases every day. The letter was, in essence, a settlement communication—an offer "to have the action discontinued" in exchange for the Paneques' making payments to bring their loan current. *Id*. Ex. C. The Eleventh Circuit has recognized that such communications "aimed at steering . . . litigation to a conclusion" trigger the litigation privilege because they "occur[] during the course of a judicial proceeding and ha[ve] a substantial relation to that proceeding." 372 F.3d at 1276 (emphasis omitted). The same conclusion applies to the reinstatement letter here.[5]

---

[5] *See also Acosta v. Gustino*, 2013 WL 6069862, at *5 (M.D. Fla. Nov. 18, 2013) (dismissing FCCPA, FDUTPA, and common law claims because "the subjects addressed in the letter are grounded in, and linked to, the dispute"); *Levin, Middlebrooks, Mabie, Thomas, Mayes &*

### 2. *Plaintiff Fails to Plead the Requisite Scienter.*

Separate from the threshold issues of standing and immunity, Plaintiff's FCCPA claims also fail for want of the requisite scienter allegations. The claim is based on Fla. Stat. § 559.72(9), which prohibits an attempt to "claim, attempt, or threaten to enforce a debt when such person *knows* that the debt is not legitimate, or assert the existence of some other legal right when such person *knows* that the right does not exist." *See* AC ¶ 30. Factual allegations of scienter are thus necessary to plead an FCCPA claim: a party attempting to state a claim under the statute "must allege knowledge or intent by the debt collectors" that their actions violate the law. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009). This requires "facts showing that Defendant[s] had actual knowledge of the impropriety or overreach of its claims," *Gardner v. Bay Area Credit Servs., LLC*, 2015 WL 5829692, at *2 (M.D. Fla. Oct. 2, 2015)—that is, that Defendants knew, at the time of the reinstatement letter, that they had no "legal right" to include estimated fees in a reinstatement quote in order to provide an extended good-through date. *Reese*, 686 F. Supp. 2d at 1309-10. Here, the facts on which Plaintiff predicates his claims of ill intent are inadequate, as a matter of law, to plead such knowledge.

Plaintiff attempts to allege that Defendants knew the reinstatement quote violated the law for essentially four reasons. First, he asserts that Defendants "knew that the estimated fees were illegitimate" because Defendants "knew that [they] had not incurred or paid any of the estimated costs." AC ¶¶ 117, 130; *see also id.* ¶¶ 115-16, 127-29. This allegation is entirely circular and adds nothing to the scienter analysis. As noted, Plaintiff must plead that Defendants had knowledge of the (purported) *unlawfulness* of including estimated fees—not the fees themselves.

---

*Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) ("participants in litigation must be free to engage in unhindered communication, . . . [and] be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action").

*See*, *e.g.*, *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976) (FCCPA "requires that the person against whom recovery is sought 'know' the claim is not legitimate").[6]

Second, Plaintiff alleges that Defendants "knew that charging estimated fees and costs was illegitimate because . . . several trade publications [] had issued warnings . . . that charging estimated fees and costs was not allowed." AC ¶¶ 118, 132. "Warnings" in legal publications do not (and cannot) make something illegal. Regardless, no such "warnings" are pled—Plaintiff merely cites two articles reporting on the *Prescott* decision and advising servicers to "examine" their "practices." *Id.* at ¶ 55. More fundamentally, the purported "warnings," even if one accepts Plaintiff's characterization of them, cannot plead scienter because Plaintiff offers no facts to suggest Defendants actually knew of these articles from "Lexis Legal News" or "USFN," whatever that is. *See Prescott*, 2016 WL 4257517, at *4 ("it is axiomatic that constructive knowledge is not actual knowledge").

Third, Plaintiff alleges that Defendants "knew that charging estimated fees and costs was illegitimate" because of *Prescott*. AC ¶¶ 119, 133. That allegation, of course, rests on the premise that *Prescott* even applies to Plaintiff's situation. As demonstrated above (Section II.A, *infra*), *Prescott* is factually and legally distinguishable from this case in numerous material respects, and so its mere existence is not somehow sufficient to plead scienter.

Finally, Plaintiff alleges that Bank of America "knew that charging estimate fees and costs was illegitimate" because "Bank of America had entered the Consent Judgment" that permitted a servicer to "collect a default-related fee only if the fee is for reasonable and appropriate services actually rendered." AC ¶ 131. The referenced judgment is irrelevant. For

---

[6] Similarly, Plaintiff alleges that Defendants "knew that charging estimated fees and costs was illegitimate because [they] routinely credit[] and refund[] estimated fees and costs." AC ¶¶ 120, 134. At most, this allegation pleads that Defendants knew the refunded fees had not been incurred, not that they knew it was illegal to charge and refund those fees but did so anyway.

one thing, it expired before Plaintiff requested any reinstatement quote. AC Ex. D ¶ 15. Even setting that aside, the judgment does not support Plaintiff's theory that accounting for fees likely to be incurred is *per se* unlawful—such fees either *will* be for services actually rendered by the time they are collected or will be "refund[ed]" to the borrower if they "have not been incurred at the time you pay," as the reinstatement quote clearly discloses. AC Ex. C at 6. Here, where Plaintiff paid nothing and Bank of America "collect[ed]" nothing, the issue is of no moment and pleads nothing about Defendants' scienter.

### C. Plaintiff Fails to State a Claim Under RESPA Because Plaintiff Fails to Plead Either a Valid Request or an Inadequate Response.

In Count I, Plaintiff alleges that Bank of America violated RESPA's implementing regulations (and, hence, the statute) in three ways.

First, Plaintiff alleges that Bank of America violated 12 C.F.R. § 1024.36(d)(1)(i) by "respond[ing] to the Plaintiff's request with information listed in a form reinstatement quote that contained illegal 'estimated fees' not owed by Plaintiff and 'Other/Miscellaneous Fees' without identification or explanation as to why and for what they were charged." AC ¶ 99. This claim fails at its inception. By its plain terms, Section 1024.36 applies only to a "qualified written request" made by a borrower. 12 C.F.R. § 1024.36(a).[7] "Qualified written request," or QWR, is a term of art for RESPA purposes that "means a written correspondence from the borrower to the servicer" delivered to "a separate and exclusive office and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(a), (e)(1). The idea is that RESPA "imposes short timeframes for mortgage servicers to respond to potentially detailed inquiries," and "[t]o aid servicers with this task," it allows them "to establish a designated address for QWRs." *Roth*

---

[7] Section 1024.36(d)(1) imposes obligations on servicers to "respond to an information request," and § 1024.36(a), in turn, defines "a request for information for purposes of this section" as "[a] qualified written request."

*v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014). "[F]ailure to send the [request] to the designated address . . . does not trigger the servicer's duties under RESPA." *Id.* at 182 (quoting *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148-49 (10th Cir. 2013)). Plaintiff concedes he did not send his request for information to a dedicated QWR address—instead, he alleges that his attorneys sent it "via e-mail to Frenkel [Lambert]." AC ¶ 40. That is the end of the inquiry.

Beyond this, a servicer's only obligation under the provision at issue is to "respond to an information request" with "the requested information." 12 C.F.R. § 1024.36(d)(1)(i). There is no claim that Bank of America failed to do that. To the contrary, Plaintiff alleges he received a response. AC ¶ 42; *see Norris v. Bayview Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 151353, at *27-28 (C.D. Cal. Oct. 25, 2015) ("Plaintiff fails to state a RESPA claim" under 12 C.F.R. § 1024.36 because "Plaintiff does not allege that Bayview failed to respond to the request").[8] That, again, is the end of the inquiry.

Second, Plaintiff alleges that Bank of America violated 12 C.F.R. § 1024.32(a)(1) "by charging for 'estimated' fees not owed." AC ¶ 101. From this allegation, one might conclude that Section 1024.32 has something to say about estimates or the accuracy of quoted charges. But it doesn't. Instead, the provision merely addresses the "[f]orm of disclosures" and provides that "disclosures required under this subpart must be clear and conspicuous, in writing, and in a form that a recipient may keep." 12 C.F.R. § 1024.32(a)(1). And that provision is wholly irrelevant. There *was* no "required" disclosure here, since Plaintiff fails to plead he sent a statutorily

---

[8] Plaintiff did not attach his request to the amended complaint. This provides yet another independent reason to dismiss his RESPA claim, as the Court can only speculate as to what it actually said. *See, e.g.*, *Evans v. Nationstar Mortg., LLC*, 2015 WL 6756255, at *9 (E.D. Cal. Nov. 5, 2015) (dismissing RESPA claim where plaintiff did not attach his requests for information to the complaint); *Zaychick v. Bank of Am., N.A.*, 2015 WL 7077371, at *4 (S.D. Fla. Nov. 13, 2015) (analyzing the requirements of 12 C.F.R. § 1024.36 in light of "what [Plaintiff's] request asked for" and how the request was "phrased").

compliant QWR (and also fails to establish that a QWR response would be a "disclosure[] required under this subpart," anyway—"disclosures" and responses to requests for information are entirely different things under the regulation). Regardless, Bank of America's response was lucidly "clear and conspicuous" even if one assumes *arguendo* that the provision applies. The reinstatement letter sets forth each type of payment due, which ones had already been incurred, and which ones were "estimated," to the point that Plaintiff was even able to draft his complaint specifying the fees he objected to, down to the penny. *See* AC ¶ 47. Nothing in Section 1024.32 (or Section 1024.36) mandates this level of detail, but Bank of America provided it anyway.

Third, Plaintiff also references three provisions of 12 C.F.R. § 1024.38 without explaining how Bank of America is supposed to have violated them. AC ¶ 104. This reference can be ignored because there is no private right of action to enforce 12 C.F.R. § 1024.38.[9]

Finally, even if these regulations were implicated by the facts alleged (and they are not), Plaintiff would *still* have failed to plead a cognizable RESPA claim. Plaintiff brings the claim under 12 U.S.C. § 2605(k), and an element of a claim under that section is "actual damages to the borrower *as a result of the failure*" to comply with RESPA. 12 U.S.C. § 2605(f)(1)(A) (emphasis added).[10] In the RESPA context, actual damages means "actual pecuniary loss."

---

[9] *See* 78 Fed. Reg. 10696, 10779 ("[T]he Bureau is restructuring the final rule so that it neither provides private liability for violations of § 1024.38. . . ."); *see also Smith v. Nationstar Mortg.*, 2015 WL 7180473, at *4 (E.D. Mich. Nov. 16, 2015) (no private right of action for violations of § 1024.38); *Andrade v. Carrington Mortg. Servs., LLC*, 2015 WL 7108119, at *3 (W.D. Mich. Nov. 13, 2015) (same); *Sharp v. Deutsche Bank Nat'l Trust Co*., 2015 WL 4771291, at *6–7 (D.N.H. Aug. 11, 2015) (same).

[10] *See also Long v. Residential Credit Sols., Inc.*, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015) ("Plaintiff must plead a plausible causal connection between Defendant's alleged RESPA violation and his actual damages."); *Penner v. Indymac Bank, F.S.B.*, 2013 WL 5970731, at *2 (M.D. Fla. Nov. 8, 2013) ("[E]ven if the complaint alleged sufficient facts to show the Bank's noncompliance with RESPA, which it does not, the claim fails to supply notice of how Renner suffered any injury and what caused those injuries, *i.e.*, whether the injuries were the result of the violations of RESPA."); *Refroe v. Nationstar Mortg., LLC*, 2015 WL 541495, at *7 (S.D. Ala.

-16-

*McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1366 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 467 (11th Cir. 2010). As discussed above, Plaintiff has alleged no "actual damages" at all (other than in conclusory terms), and even if he did, he has pled no facts showing that they somehow "resulted" from the (non-existent) RESPA violation.[11] And, because "actual damages" must be pled, Plaintiff cannot rely on his "informational standing" theory to state a RESPA claim, even if that theory were sufficient for Article III purposes.[12] The "'actual damages' requirement is . . . *more rigorous than*" the requirements of standing. *Doe v. Chao*, 306 F.3d 170, 180 n.6 (4th Cir. 2002) (emphasis added), *aff'd*, 540 U.S. 614 (2004).

Plaintiff is not entitled to statutory damages, either. Statutory damages under RESPA cannot be recovered "in the absence of actual damages." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 n.4 (11th Cir. 2016). He also fails to allege the necessary predicate for statutory damages, "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). Plaintiff offers no factual support for his boilerplate allegations about "Bank of America's standard business practice." AC ¶ 63. Plaintiff has not provided any "allegations regarding [] other borrowers," and therefore has not stated any valid claim predicated on any pattern or practice. 822 F.3d at 1247.

---

Feb. 10, 2015) ("Plaintiff has alleged no actual damages that are directly related to or flow directly from the alleged inadequate response by Nationstar").

[11] *See Jackson v. Ocwen Loan Servicing, LLC*, 2012 WL 882493, at *2-3 (S.D. Fla. Mar. 14, 2012) (dismissing RESPA claim because "a conclusory statement that [a plaintiff] has suffered 'detriment and financial injury'" is not a permissible substitute for actual "facts that show he suffered actual damages"); *Russell v. Nationstar Mortg., LLC*, 2015 WL 5029346, at *7 (S.D. Fla. Aug. 26, 2015) ("Nationstar could not have provided Plaintiffs with any information that would have mitigated the damages they claim to have suffered.").

[12] *See, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("Redbox appears to confuse the separate issue of whether plaintiffs have suffered financial harm as a result of the disclosure with Article III's injury-in-fact requirement for purposes of constitutional standing to bring suit in the first place."); *Wood v. GC Servs., LP*, 2012 WL 995207, at *3 (M.D. Fla. Mar. 23, 2012) (rejecting attempt to "equate[] 'injury in fact' with actual damages").

-17-

### D.  Plaintiff's FDCPA Claim Against Frenkel Fails as a Matter of Law.

To plead an FDCPA claim, Plaintiff must allege: "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Anselmi v. Shendell & Assocs., P.A.*, 2015 WL 11121357, at *2 (S.D. Fla. Jan. 7, 2015). The ongoing foreclosure lawsuit and the purely informative nature of the response to the reinstatement request shows that Plaintiff was not the object of collection activity—thwarting the first element. It follows that Frenkel's response did not violate the FDCPA. At best, the communications resemble settlement discussion between litigants, which are not actionable.

As the Amended Complaint and exhibits show, the reinstatement information provided by Frenkel was in response to a request by Plaintiff's counsel during the course of litigation. Mere responses to a borrower's own requests do not constitute "collection activity" actionable under the FDCPA because they are "in the nature of a customer service response, rather than a debt-collection demand." *Francis v. GMAC Mortg.*, 2007 WL 1648884, at *4 (E.D. Mich. June 6, 2007). The letter's use of boilerplate FDCPA language regarding information collection is not dispositive of whether it is debt-collection activity—what matters it that debt-collection activity is initiated by the debt collector, while the communication here was brought on by Plaintiff. Frenkel's response indicated it was not a demand for payment by expressly instructing Plaintiff to contact Frenkel to confirm any payoff figures. Further, communications which only list amounts due with prospective payments are not considered attempts to collect a debt under the FDCPA. *Ordonez v. Green Tree Servicing LLC*, 2016 WL 3658684, at *6 (D. Nev. July 8, 2016).

But even if the reinstatement letter were covered by the FDCPA, the claim should still be dismissed, because Plaintiff's counsel's presence as an intermediary (and, indeed, the catalyst for the challenged communication) negates any claim the letter was "misleading." AC ¶ 108. While

the Eleventh Circuit has found communications with counsel to be subject to the FDCPA in certain instances (*Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016); *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015)), it has preserved the prospect of applying a higher "competent lawyer" standard (as opposed to the "least sophisticated consumer" standard) in cases where a borrower's representation by counsel is material to whether a communication is misleading. *See Bishop*, 817 F.3d at 1277 n.8 (declining to imply "competent lawyer" standard "on the facts of this case," but acknowledging its application elsewhere). *Bishop* observed that "conduct inherent to the adversarial process" may not be actionable under the FDCPA. *Id.* (citing *Miljkovic*, 791 F.3d at 1307 ("We will not limit a debt-collector attorney's ability to engage in conduct inherent to the adversarial process.")).

The reinstatement letter at issue here was "inherent to the adversarial process" as a settlement communication, and would not have been misleading to Plaintiff given his legal counsel. Unlike in *Prescott* (which involved *pre*-suit fee demands), the letter here was provided in response to an inquiry by Plaintiff's counsel while the parties were in litigation and expressly offered "to have the action discontinued" upon reinstatement. AC Ex. C. The boilerplate "debt collection" language, standing alone, does not render Frenkel's communication something other than a settlement exchange. As noted by the Eleventh Circuit, there is nothing preventing an attorney from requesting a specific amount of attorney fees prior to the entry of judgment for such fees. *Newman v. Ormond*, 396 F. App'x 636, 639-40 (11th Cir. 2010).

Further, this Court should not lose sight of the fact that the reinstatement request came from counsel only a few days after the *Prescott* decision (and months before the mandate). Plaintiff insists that *Prescott* was well-publicized and that those publications should have been construed by Defendants to prohibit any accounting for estimated fees in any circumstances

whatsoever. But by the same token, to the extent there was anything "misleading" about the quote, the attorney who requested it would have been aware of the issue and able to advise his client accordingly. Plaintiff's claim of "confusi[on]" is therefore implausible. AC ¶ 76.

The Eleventh Circuit in *Bishop* also relied on a discussion in *Evory v. RJM Acquisitions Funding L.L.C.,* 505 F.3d 769, 778 (7th Cir. 2007), which drew a distinction between "false statement[s] of fact," which are actionable 'whether made to the consumer directly, or indirectly through his lawyer," versus allegedly "misleading" statements which are *not* misleading when a borrower has competent counsel to advise him, because a lawyer is "less likely to be either deceived or misled" than the consumer." 817 F.3d at 1275 (quoting *Evory*). This case falls into the latter bucket. Frenkel is not accused of misstating any *fact* about Plaintiff's debt but of making a legally incorrect demand as to which amounts are due. As noted above, it conveyed the *facts* so accurately that Plaintiff's counsel had no problem drafting a complaint that specified the precise line items to which he objected. *See* AC ¶ 47. Under those circumstances, there is no basis to hold Frenkel's response violative of the FDCPA because it may have misled a hypothetical "least sophisticated consumer" who was *not* represented by counsel. And it would be a bizarre situation indeed where a lawyer can send an information request seeking a settlement of the claim, and then sue his opponent under the FDCPA using an unsophisticated consumer standard as a bludgeon. Every fact about the communication here, from its timing to the involvement of counsel, belie any claim Plaintiff was misled. To the contrary, he got exactly what he wanted from Defendants' response—an excuse to file this lawsuit. But he still fails to state any claim for relief, and the suit should be dismissed as a matter of law.

Respectfully submitted,

/s/ Brooks R. Brown                                /s/ Joseph H. Lowe
Brooks R. Brown (*pro hac vice*)                   Richard M. Jones
Keith Levenberg (*pro hac vice*)                   Joseph H. Lowe
GOODWIN PROCTER LLP                                Klein Glasser Park & Lowe, P.L.
901 New York Ave., N.W.                            9130 S. Dadeland Blvd., Ste. 2000
Washington, D.C. 20001                             Miami, FL 33156
Tel.: (202) 346-4000                               Tel.: (305) 670-3700
bbrown@goodwinprocter.com                          jonesr@kgplp.com
klevenberg@goodwinprocter.com                      lowej@kgplp.com


/s/ James Randolph Liebler, II                     *Counsel for Defendant Frenkel Lambert*
James Randolph Liebler, II                         *Weiss Weisman & Gordon LLP*
Andrew Kemp-Gerstel
LIEBLER GONZALEZ & PORTUONDO PA
44 W. Flagler St., 25th Floor
Miami, FL 33130
Tel.: (305) 379-9626
jrlii@lgplaw.com
akg@lgplaw.com


*Counsel for Defendant Bank of America, N.A.*

Date: November 21, 2016

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically. I hereby certify that I have mailed by U.S. Postal Service the document to any non-CM/ECF participants.


By: /s/James R. Liebler, II
      JAMES R. LIEBLER, II


Dated:  November 21, 2016