**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Civil Action No. 1:16-cv-21212-GAYLES**

**IGNACIO PANEQUE**, individually and on behalf of himself and all others similarly situated,

      *Plaintiff,*

vs.

**BANK OF AMERICA, N.A.**, and
**FRENKEL LAMBERT WEISS WEISMAN & GORDON LLP**,

      *Defendants.*

_____/

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.  INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF THE CASE ............................................................................... 3

III.  ARGUMENT .......................................................................................................... 5

    A.  Paneque has Standing. .................................................................................. 5

    B.  Paneque States a RESPA Claim against Bank of America ........................... 9

        1.  Bank of America's receipt of Paneque's request triggered RESPA ........... 9

        2.  Paneque states a RESPA claim on the merits ......................................... 11

    C.  Paneque States an FCCPA Claim against Both Defendants. ....................... 13

        1.  The Litigation Privilege Does Not Apply to a Reinstatement Quote Provided Outside of a Foreclosure Judicial Proceeding. ......................... 13

        2.  The Complaint Adequately Pleads Scienter and Defendants Raise a Factual Issue not Properly Determined on a Motion to Dismiss. ............ 15

    D.  Paneque States an FDCPA Claim against Frenkel. .................................... 17

REQUEST FOR HEARING .......................................................................................... 21

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Nat. Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*,
   810 So. 2d 996 (Fla. Dist. Ct. App. 2002) ..............................................................14

*Banner v. Wells Fargo Bank, N.A.*,
   No. 502007CA000815, 2011 WL 7446508 (Fla. Cir. Ct. Oct. 24, 2011) ..............................16

*Benner v. Bank of Am., N.A.*,
   917 F. Supp. 2d 338 (E.D. Pa. 2013) ..................................................................11

*Bishop v. Ross Earle & Bonan, P.A.*,
   817 F.3d 1268 (11th Cir. 2016) ..................................................................19, 20

*Blake v. Seterus, Inc.*,
   No. 16-21225-CIV, 2016 WL 4767551 (S.D. Fla. Sept. 13, 2016)....................................8, 9

*Church v. Accretive Health, Inc.*,
   ___ Fed. App'x ___, No. 15-15708, 2016 WL 3611543 (11th Cir. July 6,
   2016) ............................................................................................5

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*,
   950 So. 2d 380 (Fla. 2007)......................................................................13, 14

*Evory v. RJM Acquisitions Funding L.L.C.*,
   505 F.3d 769 (7th Cir. 2007) ......................................................................19

*Francis v. GMAV Mortg.*,
   2007 WL 164884 (E.D. Mich. June 6, 2007)........................................................17, 18

*Hewitt v. Law Offices of David J. Stern, P.A.*,
   No. 502009CA036046, 2012 WL 8018578 (Fla. Cir. Ct. Sept. 27, 2012) ..............................16

*JWD Auto., Inc. v. DJM Advisory Group*,
   ___ F. Supp. 3d ___, No. 2:15-cv-793, 2016 WL 6835986 (M.D. Fla. Nov. 21,
   2016) ............................................................................................7

*Kaid v. Store Ctr. Food Market, Inc.*,
   668 So. 2d 1110 (Fla. Dist. Ct. App. 1996) ..........................................................7

*La Grasta v. First Union Securities, Inc.*,
   358 F.3d 840 (11th Cir. 2004) ................................................................1, 10, 14

*LatAm Inv., LLC v. Holland & Knight, LLP*,
   88 So. 2d 240 (Fla. Dist. Ct. App. 2011) ............................................................14

ii

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................5

*McLean v. GMAC Mortg. Corp.*,
    595 F. Supp. 1360 (S.D. Fla. 2009) ....................................................12, 13

*McMillen v. Resurgent Capital Servs., L.P.*,
    No. 2:13-CV-00738, 2015 WL 5308236 (S.D. Ohio Sept. 11, 2015) ..............10, 11

*Miljkovic v. Shafritz & Dinkin, P.A.*,
    791 F.2d 1291 (11th Cir. 2015) .......................................................14, 18, 19, 20

*Nicklaw v. CitiMortgage, Inc.*,
    839 F.3d 998 (11th Cir. 2016) ........................................................................6, 7

*Ordonez v. Green Tree Servicing*
    LLC, 2016 WL 3658684 (N.D. Nev. July 8, 2016) ........................................17, 18

*Prescott v. Seterus, Inc.*,
    635 Fed. App'x 640 (11th Cir. 2015) ..................................................1, 2, 16, 17

*Reese v. JPMorgan Chase & Co.*,
    686 F. Supp. 2d 1291 (S.D. Fla. 2009) ...........................................................15

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016).....................................................................................1, 5, 7

*Urquilla-Diaz v. Kaplan Univ.*,
    780 F.3d 1039 (11th Cir. 2015) .......................................................................8, 18

*Vought v. Bank of Am., NA*,
    No. 10-2052, 2010 WL 4683599 (C.D. Ill. Sept. 24, 2010) ..............................11

*Wirt v. Central Life Assur. Co.*,
    613 So. 2d 478 (Fla. Dist. Ct. App. 1992) .......................................................15

*Zia v. CitiMortgage, Inc.*,
    ___ F. Supp. 3d ___, No. 15-cv-23026, 2016 WL 5369316 (S. D. Fla. Sept.
    26, 2016) ........................................................................................................6, 7

**Statutes**

12 U.S.C. § 2601, *et seq*........................................................................... *passim*

12 U.S.C. § 2605(f)(1)(A)....................................................................................13

12 U.S.C. § 2605(k) .............................................................................................9

15 U.S.C. § 1692, *et seq*.......................................................................... *passim*

15 U.S.C. § 1692e(2) ..................................................................................................17

15 U.S.C. § 1692f(1) ..................................................................................................17

15 U.S.C. § 1692g(a) ...................................................................................................5

Fla. Stat. § 559.72 ............................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................7, 8, 18

**Regulations**

12 C.F.R. § 1024.32(a)(1) ..........................................................................................12

12 C.F.R. § 1024.35(c) ...............................................................................................10

12 C.F.R. § 1024.36(a) ............................................................................................9, 10

12 C.F.R. § 1024.36(d)(1)(i) ....................................................................................9, 11

12 C.F.R. § 1024.38(a) ...............................................................................................12

12 C.F.R. § 1024.38(b)(1)(i) .......................................................................................12

12 C.F.R. § 1024.38(b)(1)(iii) .....................................................................................12

## I.    INTRODUCTION

Plaintiff Ignacio Paneque responds in opposition to the motion of Defendants Bank of America, N.A. ("Bank of America"), and Frenkel Lambert Weiss Weisman & Gordon LLP ("Frenkel"), to dismiss his amended complaint.  Contrary to Defendants' characterization, there was no "moving target" for Defendants to try and "hit" to respond accurately to Paneque about the amount due to reinstate his mortgage. There was only one target – the true amount of debt *presently owed* including only fees and costs *actually incurred*. Rather than only demanding this amount, Defendants required that Paneque pay estimated attorney's fees and costs or lose his home. Doc. #33, Ex. E at 7 ("Response Letter"). Making matters worse, these estimated amounts were concealed in line items labeled confusingly as "LITIGATION MTG FEE[s]." *Id.* at 6, 7.

Before the Response Letter was issued, the Eleventh Circuit clearly held that a mortgage servicer falsely represented what a borrower owed by demanding estimated fees in a reinstatement quote. *See Prescott v. Seterus, Inc.*, 635 Fed. App'x 640, 647 (11th Cir. 2015) ("[The defendant] violated the FDCPA and FCCPA by charging [the plaintiff] estimated attorney's fees that he had not agreed to pay in the security agreement."). Just as the plaintiff in *Prescott* stated a prima facie violation of the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA"), so too does Paneque state FDCPA and FCCPA claims based on Defendants' demand of estimated attorney's fees and costs. Defendants' other arguments are addressed in turn and do not warrant dismissal.

First, Defendants argue that Paneque failed to adequately plead damages for Article III standing under *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1545 (2016). However, this argument ignores that Congress, through the FDCPA, conveyed a private right of action to borrowers where a debt collector mischaracterizes the amount of the debt owed. Accurate debt information is especially crucial in the mortgage context, where a borrower faces the loss of his home and the

1

displacement of his family if the entire amount owed is not paid, as Paneque did here. Additionally, Defendants ignore the pled facts that explain in detail that Paneque suffered a monetary loss by paying additional attorney's fees and costs to try and understand Defendants' misleading and confusing reinstatement quote. Here, of course there was injury to Paneque for receiving false and misleading information about the amount that he owed when he faced the loss of his home, and he suffered monetary damages trying to understand the true amount owed.

Second, Bank of America argues for dismissal of Paneque's Real Estate Settlement Procedures Act ("RESPA") claim because Paneque did not plead that he sent his request for information to a specific mailbox address. However, Bank of America's *receipt* of the request is sufficient to trigger its responsibilities under RESPA and it is undisputed that Bank of America received, processed and responded to Paneque's request. Bank of America's other argument that it cannot be held liable for providing false information does not align with RESPA's mandate for loan servicers to provide information responsive to a borrower's inquiry.

Third, Defendants seek dismissal of Paneque's FCCPA claims by relying upon a litigation privilege that does not apply to a reinstatement quote that was not communicated in a legal proceeding. Additionally, Defendants argue that Paneque's FCCPA claim should be dismissed for failure to plead actual knowledge, ignoring facts pled in the Complaint concerning Defendants' knowledge of prohibitions in the subject mortgage, a prior consent judgment, and *Prescott*, as well as their usual practice of demanding estimated amounts. Further, the question of actual knowledge is fact intensive and cannot be resolved on a motion to dismiss.

Fourth, Frenkel argues for dismissal of Paneque's FDCPA claim because its actions did not amount to "collection activity," ignoring the letter's demand of payment from Paneque and its plain language that stated Frenkel was attempting to collect a debt. Also, Frenkel argues that

2

because its letter was communicated through counsel, it cannot be held accountable for misstatements therein. This argument is undercut by the very same authorities that Frenkel cites, and it relies on a strained interpretation that the Response Letter was communicated inherent to a legal proceeding, which it was not.

## II.    STATEMENT OF THE CASE

Paneque's Amended Class Action Complaint ("CAC" or "Complaint") pertinently alleges that, on May 1, 2006, he purchased a home in Port St. Lucie, Florida, with the loan for the purchase price secured by a mortgage. *See* CAC ¶35 & Ex. A, B. Bank of America was the lender and loan servicer. *See id.* ¶¶ 35-36. Bank of America ultimately declared Paneque in default of the loan, and it retained Frenkel to institute a foreclosure action on the subject property. *See id.* ¶¶ 38-39. On December 16, 2014, Frenkel filed a foreclosure action against Paneque. *See id.* ¶ 39. Paneque hired Christopher W. Legg, P.A. ("Legg"), paying the law firm a five hundred-dollar retainer. *See id.* ¶¶ 40, 71-72.

On December 17, 2015, Legg transmitted a request in writing via email to Frenkel (the "Written Request"), seeking an itemized recitation of the amount Paneque would have to pay to reinstate his loan. *See* CAC ¶ 40. Upon consulting with Bank of America, Frenkel replied on January 15, 2016, with the Response Letter, in which Defendants informed Paneque that the loan delinquency could be cured only by remitting the "Amount Due for Reinstatement," calculated to be $45,066.73, due seven days later by January 22, 2016. *See id.* ¶¶ 42, 44, 46 & Ex. C at 1, 4. Purporting to address Paneque's request for itemization, the Response Letter further "itemized" $2,955.00 in amounts due listed as "Other/Miscellaneous Fees" thusly:

| | |
|---|---|
| LITIGATION MGT FEE | $   910.00 |
| LITIGATION MGT FEE | $   612.50 |
| LITIGATION MGT FEE | $   280.00 |
| LITIGATION MGT FEE | $   262.50 |
| LITIGATION MGT FEE | $   630.00 |

3

TITLE FEES                                  $    260.00

*See id.* ¶¶ 49-51 & Ex. C at 4.  The total amount of "LITIGATION MGT FEE[s]" was

$2,695.00. *Id.* The Response Letter further advised that the total amount due "may include

estimated expenses and fees" and that Defendants required payment of the entire amount

(including any estimated fees or costs), but that the borrower "will receive a <u>refund</u> if you pay

the 'Total Due' and the fee(s) and expense(s) have not been incurred at the time you pay." *See*

*id.* Ex. C at 6. A spreadsheet of fees and costs confirmed that Paneque's total amount contained

costs specifically acknowledged as estimated, including a pair of $250.00 entries for "Fees

Incurred Outside the Fee Schedule" and for "Legal Fee for Cancellation of Action," together

with an $18.50 entry for "Dismissal."  *See id.* at ¶¶ 47-48, 52 & Ex. C at 6.  All told, the

spreadsheet documented $1,590.00 in fees ($500.00 estimated) and $520.00 in costs ($18.50

estimated), with the $2,110.00 total falling considerably short of the cumulative $2,695.00 for

the five line items denominated "LITIGATION MGT FEE."  *See id.* ¶ 49 & Ex. C at 4, 6.

Disinclined to pay more than was, in truth, due and owing, *see* CAC ¶ 74, 76, Paneque

consulted with Legg about the amounts listed as due in the Response Letter and incurred

additional attorney's fees. *See id.* ¶ 76.  The obfuscation and delay occasioned by Defendants'

false, vague disclosures in their Response Letter also resulted in Paneque incurring additional

accrued interest on his mortgage, as well as causing him significant distress in connection with

the uncertainty surrounding the potential foreclosure of his home.  *See id.* ¶¶ 76-78. Legg sent a

cure letter to each Defendant, but neither Defendant responded.  *See id.* ¶¶ 78, 80, 81 & Ex. E.

Paneque's operative Complaint was filed on November 3, 2016 and states claims against

Bank of America for violating the RESPA (Count I); against Frenkel for violating the FDCPA

(Count II); and against both Defendants for violating the FCCPA (Counts III, IV).

4

III.     **ARGUMENT**

A.     <u>**Paneque has Standing.**</u>

Defendants maintain that Paneque has not alleged an injury in fact, and thus lacks standing to bring his claims.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (reciting irreducible elements of Article III standing, constituting an injury in fact, fairly traceable to defendant's alleged conduct, that is likely subject to redress).  Only an injury that is both concrete and particularized with respect to the plaintiff fulfills the threshold injury-in-fact element.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Paneque's claims now before this Court are of a very similar character to those at issue in *Church v. Accretive Health, Inc.*, ___ Fed. App'x ___, No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016).  Like Paneque's case, *Church* involved asserted violations of the FDCPA, specifically that the defendant's initial collection letter did not contain all the statutorily required information concerning the underlying debt.  The Eleventh Circuit declined to dismiss the appeal under *Spokeo*, explaining that the defendant's withholding of information fundamental to the debt, such as its amount, the identity of the creditor, and the means whereby the amount owing could be verified, *see* 15 U.S.C. § 1692g(a), was "not hypothetical or uncertain."  2016 WL 3611543, at *3.  The court acknowledged that the injury occasioned by the lack of information "may not have resulted in tangible economic or physical harm that courts often expect," but that Supreme Court precedent, including *Spokeo*, specifically contemplates that intangible harm is sufficiently concrete to confer constitutional standing.  *Id.*

The court of appeals in *Church* instructs that "through the FDCPA, Congress has created a new right — the right to receive the required disclosures in communications governed by the FDCPA — *and a new injury* — not receiving such disclosures."  ___ Fed. App'x at ___, 2016 WL 3611543, at *3 (emphasis added).  The Congressional decree of injury under the FDCPA

for a defendant's failure to adequately convey required information is sufficient, standing alone, to rebuff the challenge to Paneque's standing interposed here by Defendants. *See Zia*, ___ F. Supp. 3d at ___, 2016 WL 5369316, at *6 (citing *Church* and characterizing the Eleventh Circuit's decision therein as "one of many cases involving so-called 'informational standing,' where a plaintiff has standing because he seeks to enforce a statutory disclosure requirement"). Contrary to Defendants' argument, Paneque's claims involve three statutes that are each designed to "promote public interests" by protecting consumers. Here, the public interest is served where consumers, like Paneque, can either pay a bogus amount or lose their homes.

The Eleventh Circuit decision, *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016), illustrates the difference between Paneque, who has standing, and other plaintiffs that do not. The plaintiff in *Nicklaw* alleged that although he had paid off his mortgage, the defendant had failed to record the certificate of discharge within the thirty-day period prescribed by law. The Eleventh Circuit affirmed, for lack of standing, the district court's dismissal of the claim, noting that the plaintiff had neglected to plead any allegation "that he lost money because CitiMortgage failed to file the certificate[, or] that his credit suffered." *Nicklaw*, 839 F.3d at 1003. The court of appeals explained that the certificate's untimely recording "and nothing else" did not permit the conclusion that the plaintiff "suffered or could suffer any harm that could constitute a concrete injury." *Id.*; *accord Zia v. CitiMortgage, Inc.*, ___ F. Supp. 3d ___, No. 15-cv-23026, 2016 WL 5369316 (S. D. Fla. Sept. 26, 2016) (plaintiff lacked standing to maintain a claim for late filing of a mortgage discharge certificate where the complaint alleged no resultant concrete harm such as a cloud on title or encumbrance on alienation or use), *appeal filed*, No. 16-16743 (11th Cir. Oct. 24, 2016).

6

It bears mention that although the asserted informational deficiencies and obfuscations on the part of Defendants suffice on their own to satisfy the *Spokeo* standing requirements, Paneque's pleadings also reflect a procedural departure from *Nicklaw* and *Zia* and any other cases where the plaintiff has alleged one or more statutory violations "and nothing else." Here, the "something else" is that Paneque faced the loss of his home and the displacement of his family, which is life-changing harm. Also, Paneque paid additional attorney's fees to try and understand the impermissibly vague and ultimately unlawful charges that Defendants attempted to collect from him, *see* CAC ¶¶ 76, 79-80, and that, because the defective Response Letter unnecessarily prolonged the foreclosure proceedings, he incurred additional interest on the unresolved default amount; *see id.* ¶ 77. Paneque's expenditure of time and money significantly exceeds the allegations of *de minimis* harm found sufficient for standing in other contexts, such as the loss of toner, paper, and access to phone lines typical of junk fax cases. *See, e.g.*, *JWD Auto., Inc. v. DJM Advisory Group*, ___ F. Supp. 3d ___, No. 2:15-cv-793, 2016 WL 6835986 (M.D. Fla. Nov. 21, 2016), at *3. It is also not difficult to understand how false information, at a critical stage where Paneque stood to lose his home, is harmful.

Defendants' actions are alleged to have directly caused an informational deficit sufficient to confer standing in accordance with *Zia* and analogous cases; their accusations that Paneque did not intend to act on full and fair information and thereby broke the chain of causation as to the unnecessary attorney's fees and costs he sustained in addition — the "something else" he has alleged in this instance — is beside the point. *See Kaid v. Store Ctr. Food Market, Inc.*, 668 So. 2d 1110, 1111 (Fla. Dist. Ct. App. 1996) (element of causation is sufficiently alleged for Rule 12(b)(6) purposes if it "may be reasonably inferred from the

complaint's allegations") (citation omitted).[1] It is enough under those circumstances for Paneque to allege simply that he had sufficient means, but did not want to pay Defendants more money than they were entitled to, an accurate sum being legitimately incalculable given the defects and misrepresentations in the Response Letter.

The district court's dismissal order with respect to similar claims alleged in *Blake v. Seterus, Inc.*, No. 16-21225-CIV, 2016 WL 4767551 (S.D. Fla. Sept. 13, 2016), *see* Defendants' Memo at 1, 5-6, does not command the same result here. First, Blake did not bring an FDCPA claim in his suit. *See* 2016 WL 4767551 at *2. Second, the court in *Blake* did not rule that the plaintiff's assertion of statutory harm grounded in informational deficiencies was *per se* inadequate to confer standing, but merely that the allegations pertaining to injuries such as frustration of reinstatement were unacceptably conclusory, requiring additional factual support. *Id.* Following the district court's dismissal without prejudice, the plaintiff timely filed an amended complaint, *see* No. 16-21225-CIV, ECF No. 21, 26, reinforcing his claims with no fewer than twelve additional paragraphs of detailed factual allegations. The supplemental allegations of the amended complaint recited the details of the plaintiff's retention of counsel, the specific reasons why the defendant's information embargo caused him to defer reinstatement of the subject loan, and the increased costs and distress he suffered as a result.

---

[1] Defendants seize upon the specific allegation that Paneque "could have paid the actual amount owed to reinstate his loan," CAC ¶ 75, suggesting that he instead was required to plead that he "would" have paid the correct amount to demonstrate the necessary harm. *See id.* ¶¶ 73-74 (alleging that Paneque "had the ability to pay the actual amount due," but that Defendants' Response Letter overstated that amount). To the contrary, it should not be speculated what Paneque "would" have done had he received correct information from Defendants, because it must be accepted as true at this stage of the proceedings that they *did no*t provide him with lawful, accurate information. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (in evaluating prospects for dismissal pursuant to Rule 12(b)(6), the court must "accept the allegations in the complaint as true and construe them along with the reasonable inferences therefrom" in favor of the plaintiff).

The new portion of the amended complaint in *Blake* is akin in substance to the "Additional Factual Allegations Regarding Plaintiff's Injury" contained within Paneque's Complaint here, the latter allegations being, if anything, even more detailed. *See* CAC at ¶¶ 70-81. Although the defendant in *Blake* has moved anew to dismiss the amended complaint, it has wholly withdrawn its prior argument contesting the plaintiff's standing. *See* No. 16-21225-CIV, ECF No. 23. It is thus evident that the dismissal order relied on by Defendants is inapposite to the dispute before this Court, inasmuch as the *Blake* court's ruling was grounded in its evaluation of a complaint setting forth a materially less specific set of allegations than pled here.

Consequently, Paneque's standing to pursue his claims is manifest, and Defendants' arguments to the contrary are without merit.

### B.      Paneque States a RESPA Claim against Bank of America.

As a servicer of federally related mortgage loans, Bank of America must adhere to the statutory requirements embodied in RESPA.  *See* 12 U.S.C. § 2605(k).  Servicers are also required to comply with the statute's implementing regulations, *see id.* § 2605(k)(1)(E), including 12 C.F.R. § 1024.36(a), which governs "any written request for information," such as the Written Request, that identifies the borrower, the loan account, and the information sought. Paneque alleges in Count I that the Response Letter's false representations of amounts due and owing, couched in hidden and ambiguous terms, violated the requirement that Bank of America "[p]rovid[e] the borrower with the requested information."  12 C.F.R. § 1024.36(d)(1)(i).

#### 1.      Bank of America's receipt of Paneque's request triggered RESPA

Bank of America's primary argument in support of its motion to dismiss the RESPA claim is that Paneque's Written Request, to which it responded in fact, was communicated to Frenkel via email.  *See* 12 C.F.R. § 1024.36(a) (providing that the informational obligations

imposed by Part 1024 are triggered by "[a] qualified written request" ["QWR"], which asks for "information relating to the servicing of the mortgage loan.") *Id.* Bank of America suggests that a written email request is insufficient under RESPA insofar as the regulations specify that "[a] servicer *may, by written notice provided to a borrower*, establish an address that a borrower must use to request information in accordance with the procedures in this section. The notice *shall include a statement that the borrower must use the established address* to request information." *Id.* § 1024.36(b) (emphasis added).

In so doing, Bank of America takes the untenable position that Paneque was required to affirmatively plead a negative as an element of his claim in order for it to survive dismissal. *See, e.g., La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (claim bar on limitations grounds is "an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint" (citation, internal quotation marks, and alterations omitted)). Even if this Court were to consider Bank of America's premature defense, a substantial number of courts have taken the opposite view and held that "while the regulation allows a mortgage servicer to establish a separate and exclusive address, it does not require a borrower to send QWRs [written requests] to that address." *McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-CV-00738, 2015 WL 5308236, at *6 (S.D. Ohio Sept. 11, 2015) (collecting cases). Moreover, crucial to any RESPA analysis is the acknowledgement that it is a remedial statute and that it is to be construed broadly. *McMillen*, 2015 WL 5308236, at *10. The mailbox provision of RESPA, section 1024.35(c), provides that a servicer "*may,* by written notice provided to a borrower, establish a separate and exclusive office and address…." 12 C.F.R. § 1024.35(c). But, to read this provision "as adding to the statute a substantive, affirmative requirement for borrowers, especially when the plain language does not indicate that

10

such a reading is appropriate or necessary, is contradictory to the general rule requiring broad statutory construction." *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 364-365 (E.D. Pa. 2013). Thus, many courts have concluded that the plain language, context, and structure of the statute, provides that the <u>receipt</u> of a written request triggers a loan servicer's RESPA obligations. *Vought v. Bank of Am., NA*, No. 10-2052, 2010 WL 4683599, at *5 (C.D. Ill. Sept. 24, 2010); *McMillen*, 2015 WL 5308236, at *10; *Benner*, 917 F. Supp. 2d at 364-65. For these courts, the "crucial inquiry is whether," as here, "the mortgage servicer received the borrower's correspondence, because the statutory language indicates that receipt triggers the servicer's duty to respond under RESPA." *McMillen*, 2015 WL 5308236, at *6 (citations omitted).

Here, despite Bank of America's hyper-technical RESPA affirmative defense, there is no dispute that Bank of America received, processed and responded to Paneque's request for information. Bank of America cannot and does not disavow these facts, which are sufficient, and at this stage undisputed, to establish that Paneque's Written Request triggered RESPA.

### 2.    Paneque states a RESPA claim on the merits

Moving to the merits of the RESPA claim, Bank of America contends that Paneque cannot maintain an action for its failure to respond to the Written Request with "accurate, clear and conspicuous information concerning his mortgage loan," CAC ¶¶ 17, 67, 69, 102. Bank of America adds further that its alleged failure to successfully implement policies and procedures in aid of accurate and timely disclosures, *see id.* ¶ 104, confers no private right of action. According to Bank of America, "[m]ortgage loan account balances are a moving target," Defendants' Memo at 1, and thus not susceptible to sustainable accuracy.[2]

Bank of America acknowledges that, consistent with the mandate described in § 1024.36(d)(1)(i), RESPA imposed on it a duty to "[p]rovid[e] the borrower with the requested

---

[2] Mr. Paneque is confident that discovery will prove otherwise, but, for now, his allegations will suffice.

information." Scarcely pausing for effect, however, Bank of America disavows any substantive responsibilities in connection with its nominal obligation, asserting that it is merely required to respond with something (anything), the only condition being, evidently, that its response be made. *See* Defendants' Memo at 15 (representing that Paneque having "received a response" represents "the end of the inquiry" and that disclosure requirements pertain merely to form).

Of course, the information must be accurate, clear, and conspicuous to be meaningful to the borrower, otherwise the "requested information" is not truly "provided" in comportment with the intent of the regulation. More pertinently, the applicable regulations specifically prescribe that "disclosures required under this subpart must be clear and conspicuous." 12 C.F.R. § 1024.32(a)(1). "This subpart" means Subpart C of Part 1024, comprised of Sections 30 through 41, including the disclosure provisions of Section 36. The requirements that reasonable policies and procedures be adopted and enforced to meet the regulatory objectives of providing timely and accurate information to borrowers, *see* 12 C.F.R. §§ 1024.38(a), -(b)(1)(i), -(b)(1)(iii), though perhaps not independent bases for recovery, nonetheless illuminate the contours of Paneque's fundamental claim and afford Bank of America notice under the Complaint of at least one mechanism by which he intends to prove it. Surely Bank of America does not suggest that the Complaint should be dismissed because it provides too much detail.

Bank of America's assertion that the Complaint inadequately pleads actual damages associated with the Response Letter deserves only scant comment. To begin with, Paneque has alleged "significant distress" resulting from the misconduct embodied in the Response Letter, CAC ¶ 78, a type of non-economic damage that, contrary to the other side's incomplete reading of *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 1360 (S.D. Fla. 2009), *see* Defendants' Memo at 17, constitutes "actual damages to the borrower" for which Bank of America may be held

12

liable in accordance with 12 U.S.C. § 2605(f)(1)(A).  The *McLean* court squarely held "that non-economic damages such as emotional distress are recoverable under RESPA."  595 F. Supp. at 1366.  Beyond emotional distress, Paneque incurred attorney's fees and additional interest on his loan, CAC ¶ 76, as discussed previously in connection with the standing issue. Indeed, the need for accurate information, at a time when Paneque faced the loss of his home and the displacement of his family, is critical, and it is not hard to imagine how false information at this critical stage is harmful.

> ### C.    Paneque States an FCCPA Claim against Both Defendants.

Counts III and IV of the Complaint allege Defendants violated the FCCPA through their Response Letter, and in particular its caveat that "no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."  Fla. Stat. § 559.72, -.72(9); *see* CAC ¶¶ 30, 114, 121.

> ### 1.    The Litigation Privilege Does Not Apply to a Reinstatement Quote Provided Outside of a Foreclosure Judicial Proceeding.

Defendants insist that they are immune from Paneque's FCCPA claims, contending that the Response Letter was directly related to the collateral foreclosure proceeding and thus subject to the litigation privilege.  *See* Defendants' Memo at 10-11 (citing, *inter alia*, *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380 (Fla. 2007)).  The privilege affords absolute immunity "to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding."  *Echevarria*, 950 So. 2d at 384 (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. U. S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)).  *Echevarria* presented the straightforward factual scenario of law firm

misconduct toward property-owner defendants in foreclosure proceedings instituted by the law firm. The Supreme Court of Florida reviewed the matter to resolve a lower-court conflict as to whether the litigation privilege applies to statutory and common law claims.

Defendants may not avail themselves of the privilege in this instance. In salient contrast to the acts at issue in *Echevarria,* and as detailed in Part III-D, *infra*, with respect to the *Miljkovic* exception to FCDPA conduct directed at attorneys, their Response Letter had no relation whatsoever to the judicial foreclosure proceeding that Frenkel had instituted more than one year earlier. Moreover, even if Frenkel could convince this Court that it may avail itself of the privilege, Bank America is not a law firm. *Cf. Am. Nat. Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 998 (Fla. Dist. Ct. App. 2002) (determining that litigation privilege applicable to defendant law firm could not be extended to codefendant insurance underwriters, insurance agent, and bank, as non-law firm entities). Indeed, even Frenkel cannot enjoy the aegis of the privilege on a motion to dismiss, without an adequate evidentiary record. *See id.* (explaining that prior privilege ruling for law firm on different allegations issued upon "reviewing a summary judgment, not a dismissal for failure to state a cause of action"). The court elaborated that the litigation privilege is an affirmative defense. *See id.* As such, it can only "be adjudicated on a motion to dismiss if the applicability of the privilege can be clearly discerned from the face of the complaint." *LatAm Inv., LLC v. Holland & Knight, LLP*, 88 So. 2d 240, 245 (Fla. Dist. Ct. App. 2011); *see also La Grasta*, 358 F.3d at 845, *supra* at 10; *Conte*, 644 So. 2d at 133. Defendants cite no authority, under any circumstances remotely analogous to the facts of the instant case, supporting either the proposition that the FCCPA violations inhering in its Response Letter are protected by the litigation privilege, or that the privilege should be considered at the dismissal stage.

**2. The Complaint Adequately Pleads Scienter and Defendants Raise a Factual Issue not Properly Determined on a Motion to Dismiss.**

Defendants contend also that Paneque has not adequately alleged the scienter element of a FCCPA claim, which entails "actual knowledge or the impropriety or overreach" of a forbidden tactic or practice in collecting a debt. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309-10 (S.D. Fla. 2009) (citation omitted). With respect to Defendants' knowledge, Paneque alleges much more than the minimum necessary to survive dismissal. He alleges that Bank of America "knew that charging estimated fees and costs was illegitimate because at the time of its reinstatement letter," CAC ¶ 131, it had previously entered into a federal consent judgment, to which the Attorney General of Florida was a party, whereby it agreed to refrain from just the sort of conduct it is alleged to have engaged in here. *See id.* ¶¶ 57-60 & Ex. D.[3] In addition, the Response Letter's demands were a flagrant breach of multiple provisions of the mortgage documents limiting Bank of America's recovery of fees and expenses to amounts in fact incurred or disbursed. *See id.* ¶ 61. To the extent that differing conclusions might reasonably be drawn concerning Bank of America's hypothetical state of mind in committing the FCCPA violations, resolution of the issue is inappropriate at the dismissal stage. *See Wirt v. Central Life Assur. Co.*, 613 So. 2d 478, 479 (Fla. Dist. Ct. App. 1992) (reinstating fraud claims dismissed on limitations ground because date plaintiff should have known of fraud through diligent investigation had not been ascertained, and "trial court . . . was required to accept the allegations of the complaint as true for purposes of the motion").

---

[3] Bank of America deems the consent judgment "irrelevant" because it had expired prior to the Written Request. *See* Defendants' Memo at 13-14. However, there is no reason why, fewer than four years following the effective date of the judgment, Bank of America should avoid being charged with institutional knowledge of the facts and circumstances surrounding the commencement of that litigation, the conduct thereby proscribed, and the probability that unmonitored, similar conduct would subsequently lead to further litigation.

Further, prior to the issuance of the Response Letter, the Eleventh Circuit had already held a loan servicer's assessment of estimated attorney fees constituted a *per se* violations of the FCCPA. *See Prescott v. Seterus, Inc.*, 635 Fed. App'x 640, 647 (11th Cir. 2015); CAC ¶¶ 54, 114, 126. The servicer's liability under the FCCPA, however, was dependent on its actual knowledge that its conduct violated the statute. *See id.* at 646-47. Florida courts have awarded summary judgment to plaintiffs based on circumstantial evidence that a loan servicer knowingly violated the FCCPA through a usual policy of demanding estimated amounts from borrowers. *See Hewitt v. Law Offices of David J. Stern, P.A.,* No. 502009CA036046, 2012 WL 8018578 (Fla. Cir. Ct. Sept. 27, 2012) (defendants standard practice of charging estimated costs supported summary judgment for plaintiff that defendants attempted to collect debts they knew were illegitimate); *Banner v. Wells Fargo Bank, N.A.*, No. 502007CA000815, 2011 WL 7446508 (Fla. Cir. Ct. Oct. 24, 2011) (same). Defendants argue that they did not demand payment of estimated amounts because they admitted these amounts were "not yet due" (Defs' Memo. at 1, 2, 10), and the Response Letter unequivocally stated Defendants would only refund estimated amounts after the *full* reinstatement amount was paid. *Id.* at 6. This pattern of demanding, collecting and refunding estimated amounts supports Panaque's allegations that Defendants' demand from him was part of their usual, standard practice. CAC ¶¶ 63, 101.

Bank of America maintains finally that the Response Letter is not like the one in *Prescott* because Defendants starkly advised Paneque that the Reinstatement Calculation "may include estimated expenses and fees, any additional payment which will become due during the 'Good Through' date, but which is not yet due, and other anticipated future disbursements." *See* Defendants' Memo at 10, CAC Ex. C at 5. As *Prescott* makes clear, however, these sorts of attempted hedges are nothing more than plain-spoken admissions of violations:

16

> [T]he district court focused on the fact that Seterus had not misrepresented the nature of the estimated fees in the reinstatement letter. It is true that Seterus clearly separated the estimated fees from those already incurred and conspicuously marked those charges as "estimated.". . . But [the FDCPA] also prohibits the false representation of any "compensation which may be lawfully received by any debt collector for the collection of a debt. Seterus violated that provision when it demanded that Prescott pay estimated attorney's fees before it would reinstate his loan, because Seterus could not "lawfully receive" those fees under the terms of the security agreement. That is true even if Seterus believed that it was entitled to those fees.

635 Fed. App'x at 645 (citations and footnote omitted). In any event, one may reasonably question Defendants' motivation in attempting to collect more than five hundred dollars in estimated fees and costs that they were somehow bound to incur in the seven short days between the issuance of the Response Letter and the expiration of the "good through" date.

Once an evidentiary record is compiled, Defendants may argue that they should be awarded summary judgment on a lack of scienter on one or more components of the FCCPA claims. In the meantime, however, their contentions in advance of discovery are premature.

### D.   Paneque States an FDCPA Claim against Frenkel.

Paneque alleges that Frenkel violated section 1692e(2) of the FDCPA through its "false representation of . . . the character [and] amount" of the debt that he owed as condition of reinstating his mortgage loan. CAC ¶¶ 20, 108. Also, Paneque alleges that Frenkel violated section 1692f(1) of the FDCPA for unfairly attempting to collect amounts not "expressly authorized by the agreement creating the debt or permitted by law." *Id.* ¶¶ 21, 109.

First, Frenkel protests that the Complaint does not reveal that it was engaged in "collection activity" when it sent the Response Letter. Frenkel cites *Francis v. GMAV Mortg.*, 2007 WL 164884 (E.D. Mich. June 6, 2007), to argue that "customer service" responses are not actionable under the FDCPA, however, *Francis* was decided, in part, because no letter there "demanded payment in any form." *Francis*, 2007 WL 164884 at *4. Likewise, *Ordonez v.*

*Green Tree Servicing* LLC, 2016 WL 3658684 (N.D. Nev. July 8, 2016), the other case cited by Frenkel, noted there was no demand for payment and it was decided on summary judgment, not a motion to dismiss. *Ordonez*, 2016 WL 3658684 at *6. Unlike *Francis* and *Ordonez*, Paneque's Response Letter required that he pay $46,066.73 or lose his home.  CAC Ex. C at 1.

Further, Frenkel's argument is belied by the Response Letter's admonishment that "**WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**," CAC Ex. C at 2. Frenkel claims this language is "not dispositive." Defs.' Memo at 18.  However, even if it were true that such a definitive, prominent statement somehow fails to conclusively establish the Response Letter's purpose, it must be at least equally true that the same statement does not conclusively establish the opposite of what it says, *i.e.*, that the letter was decidedly *not* an attempt on Frenkel's part to collect a debt.  Under such circumstances, this Court cannot dismiss the FDCPA claim without running afoul of the familiar precept that, in accordance with the legal standard governing Rule 12(b)(6) motions, Paneque is entitled to the benefit of any competing inferences arising from the facts alleged.  *See Urquilla-Diaz*, *supra* at 8, fn 1.

Second, Frenkel invites this Court to conclude that the false representations expressed in the Response Letter are not actionable because Paneque had the benefit of competent counsel. In that regard, Frenkel identifies the applicable legal precedent directly contrary to its position, then expends a considerable portion of its allotted space explaining why that precedent should be ignored.  In *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.2d 1291 (11th Cir. 2015), the court of appeals held that alleged violations of three subsections of the FDCPA, two of which provide the bases for Paneque's claims in this proceeding, give rise to the prescribed statutory remedies notwithstanding that the conduct in question may have targeted a consumer only indirectly

18

through a lawyer intermediary.  *See id.* at 1303 ("It would create an odd situation, indeed, if the fact that a consumer was represented by an attorney somehow excused the debt collector from otherwise observing the FDCPA's requirements.").  Less than a year after *Miljkovic* was decided, the Eleventh Circuit extended its holding to a fourth subsection of the FDCPA.  *See Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268 (11th Cir. 2016).

In *Miljkovic*, the Eleventh Circuit observed that, "[w]ithout more, we will not limit a debt-collector attorney's ability to engage in conduct inherent to the adversarial process." *Miljkovic*, 791 F.3d at 1307.  The *Bishop* court discerned no similar impediment to the plaintiff's FDCPA claims where the defendant law firm, on behalf of a third party, mailed a letter to plaintiff's counsel demanding that his client tender $2,000 in fines.  The plaintiff had previously informed the third party to deal with her attorney regarding the matter.  The letter in collection of the debt potentially violated FDCPA because it failed to inform the plaintiff that any dispute of the amount alleged to be due had to be communicated in writing.  In reversing the district court's dismissal of the claims, the *Bishop* court acknowledged the contrary result in *Miljkovic* for conduct inherent to the adversarial process.  *Bishop*, 817 F.3d at 1277 n.8.  The court also noted an exception carved out by its sister circuit in *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007), whereby, under certain circumstances, deceptive or misleading statements directed at the consumer through counsel are not actionable under the FDCPA.  The rationale behind the *Evory* holding is that a competent attorney should see through the attempted deception or misdirection.  But, as the Eleventh Circuit pointed out, "*Evory* distinguished false statements from statements that are merely misleading or deceptive. The court explained that the competent lawyer standard does not bar recovery when a lawyer would be unable to discover the falsity of the representation without an investigation."  *Bishop*,

19

817 F.3d at 1275 (citing *Evory*, 505 F.3d at 775 (internal quotation marks omitted)).   For example, regardless of the competence of counsel, "it would be unreasonable to rely on the consumer's attorney to notify the consumer of the amount of her debt. . .   Only the debt collector can provide that information."  817 F.3d at 1273.

The instant case is indistinguishable from *Bishop* in all material respects, but Frenkel nonetheless harps on the dicta from the Eleventh Circuit's careful opinion to suggest that one of the two potentially distinguishing avenues may apply here.  Neither of them do.  The representations in the Response Letter that Paneque owed Bank of America money for estimated attorney's fees and expenses that had not yet been incurred were not merely misleading — they were outright false for the reasons stated in the Complaint. Legg would have no way of knowing the degree of falsity. Moreover, neither the Written Request nor the Response Letter were created as part of the foreclosure litigation. The documents are not captioned in a way that would distinguish them from typical FDCPA correspondence (or that governed by RESPA), and no identifying information pertaining to the foreclosure case appears in either. Neither document refers to a "settlement" of any claim, nor do they relate to any claim, defense, or contested issue in the foreclosure. No certificate of service accompanies either the Written Request or the Response Letter, and neither document has been submitted for filing anywhere other than in the instant proceeding. Finally, it must be taken as true that Paneque retained and paid Legg outside the contours of the foreclosure action "for consultation regarding the reinstatement amounts."  CAC ¶ 76.  Under the circumstances, there is no basis to apply the *Miljkovic* exception for "conduct inherent to the adversarial process" therefore Frenkel's argument fails.

20

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b), L.R. S.D. Fla., Plaintiff requests oral argument on

Defendants' motion to dismiss. Plaintiff submits that oral argument would assist the Court in

considering and analyzing the impact of the numerous legal principles discussed herein. Plaintiff

estimates that forty-five minutes would be sufficient for the requested hearing.


Dated: December 15, 2016                          Respectfully submitted,

                                                  */s/ James L. Kauffman*
                                                  James L. Kauffman (Fla. Bar No. 12915)
                                                  BAILEY & GLASSER, LLP
                                                  1054 31st Street NW, Suite 230
                                                  Washington, DC 20007
                                                  Telephone: (202) 463-2101
                                                  Facsimile: (202) 342-2103
                                                  Email: jkauffman@baileyglasser.com

                                                  J. Dennis Card, Jr., (Fla. Bar No. 0487473)
                                                  Darren Newhart (Fla. Bar No. 0115546)
                                                  DCard@Consumerlaworg.com
                                                  Darren@cloorg.com
                                                  Consumer Law Organization, P.A.
                                                  2501 Hollywood Boulevard, Suite 100
                                                  Hollywood, Florida 33020
                                                  Telephone: (954) 921-9994
                                                  Facsimile: (305) 574-0132

                                                  Christopher W. Legg, P.A.
                                                  3837 Hollywood Blvd., Suite B
                                                  Hollywood, FL 33021
                                                  Telephone: (954) 235-3706
                                                  Facsimile: (954) 927-2451
                                                  Email: ChrisLeggLaw@gmail.com

                                                  *Counsel for Plaintiff and the Putative Class*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2016, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ James L. Kauffman*

James L. Kauffman
