UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Civil Action No. 1:16-cv-21212-GAYLES

IGNACIO PANEQUE, *on behalf of himself
and all others similarly situated*,

      Plaintiff,

vs.

BANK OF AMERICA, N.A. and, FRENKEL
LAMBERT WEISS WEISMAN &
GORDON LLP,

      Defendants.
_____/

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CERTIFYING CLASS FOR SETTLEMENT PURPOSES,
DIRECTING THE ISSUANCE OF CLASS NOTICE, AND
<u>SCHEDULING FINAL APPROVAL HEARING</u>**

      Plaintiff Ignacio Paneque ("Plaintiff"), by counsel and on behalf of the settlement class proposed below, hereby respectfully submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Certifying Class for Settlement Purposes, Directing the Issuance of Class Notice, and Scheduling Final Approval Hearing (the "Motion"). The Plaintiff and Defendants Bank of America, N.A. ("BANA") and Frenkel Lambert Weiss Weisman & Gordon, LLP ("Frenkel Lambert") (collectively, "Defendants"), by counsel, have reached a proposed Settlement Agreement of this putative class action. Plaintiff respectfully requests that the Court enter the proposed Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Certifying Class For Settlement Purposes, Directing the Issuance of Class Notice, of Class Notice, and Scheduling a Final Approval

Hearing ("proposed Order"), which is attached as Exhibit 1 to Plaintiff's Motion. The proposed Order, among other things, (1) conditionally certifies a class action for settlement purposes only; (2) preliminarily approves the Parties' proposed Settlement Agreement (the "Settlement Agreement"); (3) appoints Plaintiff as class representative and Plaintiff's counsel as class counsel for settlement purposes; (4) establishes a schedule to complete the tasks necessary to effectuate the proposed settlement; and (5) provides that if the Settlement Agreement is not finally approved (or terminates for any reason), all parties shall retain, without prejudice, all objections, arguments, and defenses with respect to class certification. For the reasons set forth more particularly below, the Plaintiff respectfully requests that the Court grant this Motion. Defendants have agreed to the proposed Order for settlement purposes only, and, therefore, do not oppose the relief sought (*i.e.*, entry of the proposed Order of preliminary approval) through this Motion.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

In the Action, Plaintiff Ignacio Paneque ("Plaintiff") alleges that he and other members of the proposed Settlement Class received, either directly or indirectly through an agent, attorney, or other person or entity acting or purporting to act on the borrower's behalf a Reinstatement Quote from BANA or Frenkel Lambert. Plaintiff alleges that the communications in the Reinstatement Quote violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA"). For these alleged violations, Plaintiff seeks to recover statutory damages, attorneys' fees, and litigations costs from the Defendants in the lawsuit. Specifically, Plaintiff alleges that Defendants improperly demanded the payment of estimated fees and costs in reinstatement quote letters provided to Plaintiff and settlement class members ("Settlement Class Members") for the amount needed to reinstate their

2

mortgage loans.

After engaging in extensive motion practice and propounding discovery, Plaintiff and Defendants (the "Parties") turned their collective attention to the determination of whether a settlement could be reached.  After an in-person mediation, followed by extensive negotiations and the exchange of confidential information, the Parties were able to reach the proposed class settlement.

The Settlement Agreement contemplates the establishment of a settlement fund totaling $400,000.  BANA will contribute $325,000 to the settlement fund, and Frenkel Lambert will contribute $75,000 to the settlement fund.  This fund will be used to pay Settlement Class Members a cash settlement payment in exchange for the Settlement Class Members' release of statutory, common law, and all related claims alleged in the action against the Defendants.  This fund will also be used to pay attorneys' fees and costs and a class representative award, both subject to Court approval, and all settlement administration costs.

Pursuant to the terms of the Settlement Agreement, the Defendants deny any and all allegations and claims asserted against them in the Complaint, oppose class certification for litigation purposes, and deny any and all wrongdoing.

## II.     PROPOSED SETTLEMENT

### A.     Terms of Parties' Settlement Agreement

The Settlement Agreement (attached as Exhibit 2 to Plaintiff's Motion) contemplates the establishment of a settlement fund totaling $400,000. BANA shall contribute $325,000 to the settlement fund, and Frenkel Lambert shall contribute $75,000 to the settlement fund.  The settlement amount is a lump sum, "all-in" payment that will cover all of Defendants' settlement

3

obligations to Plaintiff and the Settlement Class Members, including a case contribution award to Plaintiff, attorneys' fees and costs, and settlement administration costs.

All Settlement Class Members will receive a single, pro rata payment by check as monetary settlement relief under the Settlement Agreement in exchange for the Settlement Class Members' release of all claims against the Defendants related to reinstatement quote letters or any communications regarding the reinstatement of any mortgage loan.

**B.    Notice and Administration Provisions**

Rule 23(e)(1) provides that in a proposed settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In addition, Rule 23(c)(2) provides that, in any class action maintained under Rule 23(b)(3), as here, the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2). The test is whether the method employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twig v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted). The Eleventh Circuit's position on class notice in Rule 23(b)(3) certified class actions is one of strict adherence to due process. *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000) (holding that certification under Rule 23(b)(3) would require that class members receive notice of the suit "well before the merits of [it] are adjudicated").

Rule 23(c)(2) requires the notice to "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may make an appearance through attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person and the possible methods of identification.  *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950).  In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1099 (5th Cir. 1977).  The Supreme Court has held that due process is satisfied where "a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out.'"  *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

Defendants  records contain the name and last known address of all Settlement Class Members.  Pursuant to the Settlement Agreement, the Defendants will provide the Settlement Administrator with a Class List, including the name, property address, and last known residence address for each Settlement Class Member.  The Settlement Administrator, after updating the addresses by referenced to the National Change of Address ("NCOA") database maintained by the United States Postal Service, will distribute mail notice, by first-class mail, to each member of the Settlement Class.  In instances where the class notice is returned as undeliverable, the Settlement Administrator will forward it to the address, if any, on the face of the returned mail.

The first-class mailed notice proposed in the Settlement Agreement will provide the best notice to Settlement Class Members. This direct mail process is clearly designed to reach the maximum number of Settlement Class Members at a reasonable expense.

The Parties' proposed Class Notice, attached as Exhibit A to the Settlement Agreement, provides a full description of the nature of the action, proposed settlement, and requested attorneys' fees. The Class Notice describes in plain English the terms and operation of the settlement, the considerations that caused class counsel to conclude that the settlement is fair and adequate, the procedure for objecting to and opting out of the settlement, and the date of the fairness hearing.

### III.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being the most complex." (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Judicial approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citing *Manual for Complex Litigation* § 21.632). In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable. *Id.*

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is "within the range of reasonableness." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citing 4 Newberg on Class Actions § 11.26 (4th ed. 2002)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010).

When determining whether a settlement is ultimately fair, adequate, and reasonable, courts in the Eleventh Circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Courts may also consider the judgment of experienced counsel for the plaintiff class. *Warren v. City of Tampa*, 693 F.Supp. 1051, 1055 (M.D. Fla. 1988). Settlement negotiations that involve

7

arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. at 661-62 (citing *Manual for Complex Litigation*, Third, §30.42 (West 1995)) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

At this preliminary approval stage, consideration of the applicable factors reveals that the Parties' proposed Settlement Agreement should be preliminarily approved. The Parties' settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations by competent and experienced counsel.  Before engaging in settlement negotiations, the Parties engaged in discovery and briefed several motions. The Parties agreed to engage in class-wide mediation with the Honorable Benson G. Legg (ret.) serving as mediator.  After an all-day mediation session and subsequent conference calls, and the exchange and review of information, the Parties reached this settlement with the assistance of mediator Legg.  In addition, proposed class counsel, who recommends the settlement, is skilled and experienced in consumer lending class actions. *See* Decl. of James L. Kauffman (attached to Plaintiff's Motion as Exhibit 3), ¶¶ 4-6; *see also Muhammad v. Nat'l City Mortg., Inc.,* No. 2:07-0423, 2008 WL 5377783, at *4 (S.D. W.Va. Dec. 19, 2008) (recognizing that Plaintiff's counsel, Bailey & Glasser are "skilled and experienced in class action litigation, and have served as class counsel in several cases, including consumer lending cases").

The settlement has no obvious deficiencies, and does not improperly grant preferential treatment to the class representative or any segment of the class.  Plaintiff's class-wide FDCPA claim against Frenkel Lambert would likely be capped at a statutory damages recovery for the

Class as the lesser of $500,000 or one percent of Frenkel Lambert's net worth. *See* 15 U.S.C. § 1692k(a). Frenkel Lambert claims that one percent of its net worth would be substantially less than the $75,000 it is contributing to the Settlement. Additionally, Plaintiff's FCCPA class-wide claim against BANA is also likely capped at a statutory damages recovery for the Class as the lesser of $500,000 or one percent of BANA's net worth. *See* Fla. Sta. §559.72(2). Likewise, Plaintiff's RESPA claim against BANA is capped at a statutory damages recovery for the Class as $1,000,000 if a pattern or practice of non-compliance with RESPA is shown. Further, BANA contends that Settlement Class Members did not pay reinstatement amounts that contained estimated fees or costs in most instances. BANA represents and warrants that, consistent with the language in Paragraph (3) "Disclaimer About *TOTAL DUE – You May Owe Less:" of its Reinstatement Quote and its policies and procedures, it has refunded and/or credited, or will refund and/or credit, to Class Members' accounts any estimated amounts paid by a Class Member in response to a Reinstatement Quote in excess of the amounts necessary to reinstate the loan as of the date such funds were received. *See* Settlement Agreement, Section 5.12. Thus, the $325,000 settlement contribution from BANA is close to the expected damages that the Settlement Class Members could expect to recover. All Settlement Class Members will be compensated equally, and each will receive a settlement payment of approximately $36.00. The intrinsic value of the net settlement payment to Settlement Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation, including that the Court could grant Defendants' motions to dismiss, deny the Plaintiff's motion for class certification or grant Defendants' motions for summary judgment. The costs and uncertainty of litigation, and the expense and delay that accompany the appeal process, support approval.

The Settlement is particularly valuable to absent Settlement Class Members who, but for the Settlement, likely would be unaware of the existence of their legal claims. Even if they were aware, given the relatively small amounts of money involved, absent Settlement Class Members, and attorneys who may represent them, would have little financial incentive to prosecute individual actions. The alternative to bringing this case as a class action is bringing thousands of individual claims against Defendants. Realistically, the alternative to a class action under the present circumstances is no action at all. The relatively small amount of the compensation for the Defendants' alleged actions makes it unlikely that Settlement Class Members would pursue their claims on an individual basis. While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that accounted for the risks of further litigation.

Accordingly, this Court should find that the proposed Settlement is within the range of reasonableness, such that notice should issue to the Settlement Class, a final Fairness Hearing should be scheduled, and the Settlement Class should be provisionally certified for settlement purposes.

## IV.   CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). Certification of the proposed settlement class will allow notice of the proposed settlement to issue, thereby informing class members of the existence and terms of the proposed settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time, and place of the formal fairness hearing. *See Manual for Complex Litigation*, at §§ 21.632, 21.633.

The Parties' proposed Settlement contemplates the certification of a settlement class defined as follows:

> All borrowers who, according to readily accessible data and other electronic records of the Defendants, requested or received, either directly or indirectly through an agent, attorney, or other person or entity acting or purporting to act on the borrower's behalf, a Reinstatement Quote concerning a Mortgage Loan from either Bank of America, N.A. or Frenkel Lambert Weiss Weisman & Gordon, LLP at any time during the Class Period.

Excluded from this proposed Settlement Class are any: (i) individuals who are or were, during the proposed Class Period, officers or directors of the Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iii) all borrowers who file a timely and proper request to be excluded from the Settlement Class in accordance with Section 13 of the Settlement Agreement. The settlement Class Period runs from April 6, 2013 through the date of execution of the Settlement Agreement.

The proposed settlement class must meet the requirements for certification under Rule 23. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). These requirements are met in the instant case, and Defendants do not oppose class certification for settlement purposes.

### A. The Class Satisfies the Numerosity, Commonality, Typicality and Adequacy Elements of Rule 23(a).

#### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "The numerosity inquiry is not focused solely on the number of proposed class members, but instead whether joinder of proposed class members is impracticable." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *4 (S.D. Fla. June 15, 2010) (quotations omitted). The Eleventh Circuit has held that "[g]enerally, 'less than twenty-one is inadequate, more than forty adequate.'" *Cheney v. Cyberguard Corp.*, 213

11

F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, numerosity is satisfied because the Settlement Class consists of thousands of Florida borrowers and joinder of all such persons is impracticable. *See Kilgo v. Bowman Trans., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity is satisfied with at least 31 class members "from a wide geographical area").

### 2. Commonality

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class" and that a class action will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). This is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citations omitted). Rather, it simply requires at least one issue whose resolution will affect all or a significant number of the putative class members. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

This action implicates common questions of fact and law such as (1) whether the reinstatement letters violated the FDCPA, (2) whether the reinstatement letters violated the FCCPA, and (3) whether the reinstatement letters violated the RESPA. These questions are common to all putative Settlement Class Members, as all were borrowers on a home loan that was secured by a mortgage or deed of trust on property located within Florida, and all were sent a reinstatement quote letter from BANA or Frenkel Lambert or another entity on behalf of BANA or Frenkel Lambert. Accordingly, commonality is satisfied for settlement purposes.

### 3. Typicality

To establish typicality under Rule 23(a)(3), the claims and defenses of the representative parties must be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims "in relation to the class." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 n.23 (S.D. Fla. 2004). Typicality "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008). "The typicality requirement, like commonality, is not demanding." *See In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). There is a "sufficient nexus . . . if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *In re Trazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 686. Plaintiff's claims are clearly aligned with those of the putative Settlement Class Members. The facts supporting Plaintiff's claims are straightforward and typical of, if not identical to, the claims of the Settlement Class Members. Like all other Settlement Class Members, Plaintiff is a borrower on a home loan that was secured by a mortgage or deed of trust on property located within Florida and Plaintiff was sent a reinstatement quote letter from BANA or Frenkel Lambert or another entity on behalf of BANA or Frenkel Lambert. As such, the proposed class satisfies the Rule 23(a)(3) typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires a showing that the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). The requirement applies both to the class representatives and their counsel. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotations omitted). "Adequate representation is presumed in the absence of contrary evidence." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

Plaintiff has no interests that are antagonistic to or conflict in any way with the interests of the proposed class. Plaintiff shares an interest with the other Settlement Class Members in challenging Defendants' inclusion of estimated fees and costs in reinstatement letters, and has willingly stepped forward to pursue his claims on a class-wide basis. Plaintiff will thus fairly and adequately protect the interests of the class. Further, the class representative is represented by qualified and competent class counsel with extensive experience and expertise prosecuting class actions.

**B.   The Proposed Class Satisfies Rule 23(b)(3) Requirements of Predominance and Superiority.**

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b). Plaintiff here seeks certification under Rule 23(b)(3), which requires that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

### 1. Common Questions of Law or Fact Predominate

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *In re Terasozin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 694 (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common questions need only predominate; they need not be dispositive of the litigation." *Id.* Predominance requires common issues of fact and law to have "a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *In re Checking Overdraft Litig.*, 2011 WL 3158998, at *7.

Here, the predominance requirement is satisfied for settlement purposes because the claims of the class representative and the Settlement Class Members are based on the same legal theories and the same alleged conduct. The common questions in the case apply to all Settlement Class Members, and are readily capable of determination on a class-wide basis.

### 2. The Class Action is the Superior Method to Adjudicate Plaintiff's Claims.

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for

consideration when determining whether a class action is superior: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

In the present case, as stated above, Settlement Class Members have little interest in prosecuting individual actions. As such, there is no better method available for the adjudication of claims that might be brought by each individual class member. "Since the damage amounts allegedly owed to each individual [consumer] are relatively low – especially as compared to the costs of prosecuting [these] types of claims . . . – the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012). Here, the alternative to bringing this case as a class action is bringing thousands of individual claims. In such circumstances, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987); see also *Kennedy v. Tallant*, 719 F.2d 711, 718 (11th Cir. 1983) (suit alleging a "fraudulent scheme against a large number of individuals is particularly appropriate for class action"). In this case, this is a superior method of adjudicating the controversy because class settlement provides an efficient and appropriate resolution of the controversy. Plaintiff has thus met the requirements of Rule 23(b)(3) for settlement purposes.

C.     **Proposed Class Counsel Are Qualified to Represent the Class.**

Rule 23(g) requires that the Court appoint class counsel upon certification of the class. Factors for the Court to consider include: the work counsel has done in identifying or investigating

potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representation of the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(i) – (iv).

Proposed class counsel, Bailey & Glasser LLP, Consumer Law Group, P.A., and Christopher W. Legg, P.A., are qualified and able to represent the class. Proposed class counsel has submitted a declaration outlining his and co-counsels' wide-ranging experience litigating consumer protection, class action, and other complex cases. *See* Kauffman Decl., ¶¶ 4-6. As stated above, Plaintiff's counsel performed substantial work in investigating, prosecuting and negotiating settlement of the case, and is qualified to serve as class counsel. *See Muhammad*, 2008 WL 5377783, at *4 (recognizing skill and experience of Plaintiff's counsel).

### V.   PROPOSED SCHEDULE TO COMPLETE SETTLEMENT

The Court's calendar permitting, the Parties propose the following schedule to complete the tasks necessary to effectuate the proposed settlement:

*Class Notice mailed to Class Members:* forty-nine (49) days after entry of the proposed Preliminary Approval Order.

*Plaintiff's Motions/Applications for Attorney Fee/Litigation Cost and Class Representative Awards:* forty-two (42) days before Court Approval Hearing.

*Class Member Objection/Opt-out Deadline:* twenty-eight (28) days before Court Approval Hearing.

*Motion for Final Approval:* fourteen (14) days prior to Court Approval Hearing.

*Other submissions by Plaintiff's or Defendants:* fourteen (14) days before Court Approval Hearing.

*Court Approval Hearing:* Approximately one hundred twenty (120) days after entry of the proposed Preliminary Approval Order.

## VI. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this Motion and enter the proposed Order (attached as Exhibit 1 to Plaintiff's Motion) that, among other things, conditionally certifies this class action for settlement purposes only, preliminarily approves the Parties' proposed Settlement Agreement, appoints Plaintiff's counsel as class counsel, and establishes a schedule to complete the tasks necessary to effectuate the proposed settlement.

Dated: May 8, 2017

Respectfully submitted,

*/s/ James L. Kauffman*
James L. Kauffman (Fla. Bar No. 12915)
BAILEY & GLASSER, LLP
1054 31st Street, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 342-2103
Email: jkauffman@baileyglasser.com

J. Dennis Card, Jr., (Fla. Bar No. 0487473)
Darren Newhart (Fla. Bar No. 0115546)
Consumer Law Organization, P.A.
2501 Hollywood Boulevard, Suite 100
Hollywood, Florida 33020
Telephone: (954) 921-9994
Facsimile: (305) 574-0132
E-mail: DCard@Consumerlaworg.com

Christopher Legg (Fla. Bar No. 44460)
Christopher W. Legg, P.A.
3837 Hollywood Blvd., Suite B
Hollywood, FL 33021
Telephone: (954) 235-3706
Facsimile: (954) 927-2451
Email: ChrisLeggLaw@gmail.com

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2016, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ James L. Kauffman*
James L. Kauffman